[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
Walter Burton appeals the Scioto County Court of Common Pleas' entry of directed verdict in favor of Elsea, Inc. and Jack Mallia. Burton contends that the trial court erroneously concluded that his failure to offer a certificate of title establishing his ownership of the mobile home entitled Elsea and Mallia to a directed verdict. We agree, because ownership of the mobile home was not a bona fide issue in dispute. Burton also asserts that the trial court erred in excluding parol evidence regarding his contract with Elsea and in concluding that no reasonable person could find in favor of Burton and against Elsea. We agree, because the trial court did not properly identify the components of the contract or consider whether Elsea violated the Ohio Consumer Sales Practices Act ("CSPA"). Burton next asserts that the trial court erred by finding that no reasonable person could find in favor of Burton and against Elsea Mallia. We agree and find that the trial court erroneously resolved factual disputes in a light most favorable to Elsea and Mallia, except with regard to Burton's claims against Elsea for breach of express warranties. In the final written agreement, Elsea effectively negated any prior express warranties except upon the furnace and water lines. Finally, Burton asserts that the trial court erred by excluding probative evidence regarding both parties. We agree in part because, in some instances, the trial court arbitrarily refused to admit Burton's evidence. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings consistent with this opinion.
 I.
Burton purchased a used mobile home from Elsea. Before he purchased the home, an Elsea sales representative, Lenora Webb, and an Elsea repair person, Raymond, repeatedly told Burton that the home was in "A-one" condition and "ready to go." Raymond twice told Burton that he had fixed the homes roof, which had leaked in the past. In response to Burton's inquiries, Raymond stated that he planned to repair the linoleum and insulation and replace the furnace registers in the home.
Burton told Webb and her manager, Gary Jones, about Raymond's statements regarding the home, and stated that he would purchase the home if Raymond's promises were kept. Jones agreed that Elsea would improve the home as Burton and Raymond had discussed.
Burton met with Webb to close on the home. Burton admits that he did not read the documents he signed at the closing. The Purchase Agreement was reproduced in triplicate at the closing. The original contains a large red stamp that reads "[t]he seller of this mobile home sells it "AS IS" and assumes no responsibility for defects * * *." The second and third copies do not contain the stamp. Burton testified that the Purchase Agreement did not have a red "As-Is" stamp on it when he signed it, and that he would have noticed if the large red stamp had been on the document. Just below the "As-Is" stamp, the agreement contains a typewritten paragraph which reads "furnace will operate. Water lines will hold water. Any defects must be reported within 20 days. (NO EXCEPTIONS)." Webb signed the Purchase Agreement on Elsea's behalf.
The Purchase Agreement expressly declares that it includes additional terms on its other side. One of those terms provides in part that "[t]here is no express warranty on used mobile/manufactured homes." The same paragraph states that Elsea "will not provide any writing regarding implied warranties."
The Purchase Agreement also contains a pre-printed clause which provides "[t]his agreement contains the entire understanding between you and me and no other representation or inducement, verbal or written, has been made which is not contained in this contract." However, Burton also signed a form bearing the title "Limited Mobile Home Warranty." Specifically, Burton signed below the clause which provides:
 NO WARRANTY ON USED: In this case customer agrees that certain repairs or improvements may be required prior to living in this mobile home. Dealer has not made these repairs or has not checked the home to determine the extent of repairs. Customer has been offered a lower price and hereby assumes responsibility for any defects or service requirements. NO WARRANTY ON THIS USED MOBILE HOME.
Burton testified that he did not read the paragraph before he signed below it, that Webb did not explain that the paragraph meant that the roof, furnace, linoleum and insulation would not be repaired, and that, based on Raymond and Jones' word, he would have believed the repairs would be made even if he had read the paragraph. Though Jones signed the Limited Mobile Home Warranty on behalf of Elsea, he was not present at the closing when Webb asked Burton to sign it. The Limited Mobile Home Warranty is neither attached to nor referred to in the Purchase Agreement.
When Elsea delivered Burton's mobile home, Burton observed that the driver recklessly sped and hit bumps, causing the roof of the home to hit tree branches. On the first rainy day after delivery, sometime within twenty days of the delivery, the roof began to leak. Burton notified Elsea immediately, but Elsea refused to return his calls or respond to his inquiries. Also within twenty days of delivery, Burton also called Elsea to report that his water lines were not holding water. Elsea sent Jack Mallia to repair Burton's water lines at Elsea's expense.
Mallia told Burton that he ran "Jack's Mobile Home Repair and Service," though Mallia had never registered that business name with the Ohio Secretary of State. When Burton asked Mallia if Mallia thought painting the roof with a sealant would stop the leaks, Mallia replied that it would. Mallia quoted Burton the price of $125 plus materials to do the job, but did not put the estimate in writing. When Mallia completed the job, Burton paid the amount upon which they previously agreed.
Mallia also informed Burton that his roof had a small dip in it. Mallia did not inform Burton that he should have the dip fixed right away to prevent structural damage. Nor did he inform Burton that sealing the roof could aggravate the problem by causing water to pool on the roof, thus exceeding the roof's weight bearing and moisture repelling capabilities. Shortly after Mallia repaired the roof, Burton's neighbor informed Burton that water was pooling on the roof of his home. Burton began using garden hoses to siphon water off the roof and plastic tarps to divert the water from pooling on the roof. After two or three rainy days, the roof collapsed.
Burton lived with a partially collapsed roof covered in tarps for several years. Eventually, donations from the Veteran's Administration and Elmer Mullins enabled Burton to receive a replacement roof installed by Mullins' building company.
Burton filed suit, alleging that Elsea breached its contract and violated the CSPA. Burton also asserted that Mallia breached his contract, violated the OSPA, and negligently caused his roof to collapse. Burton presented his own testimony, as well as that of friends, neighbors and experts who observed the deterioration of the roof. At the close of Burton's case, Elsea and Mallia moved for a directed verdict. The trial court granted the motion, finding that: (1) Burton did not present title to his mobile home, (2) the terms of Burton's contract with Elsea were clear and unambiguous, (3) Burton did not present evidence that he suffered damages, and (4) Burton did not present evidence that Mallia breached his duty or acted negligently in repairing Burton's roof in the manner that Burton requested.
Burton appeals, asserting the following assignments of error:
 I. THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST WALTER BURTON ON THE BASIS OF TITLE TO THE MANUFACTURED HOME HE PURCHASED.
 II. THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST WALTER BURTON ON THE BASIS OF THE PAROLE EVIDENCE RULE AND THE CONTENTS OF THE DISPUTED CONTRACT.
 III. THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST WALTER BURTON ON THE BASIS THERE WAS NO EVIDENCE OF SUBSTANTIAL PROBATIVE VALUE ADDUCED AGAINST APPELLEE ELSEA.
 IV. THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST WALTER BURTON ON THE BASIS THERE WAS NO EVIDENCE OF SUBSTANTIAL PROBATIVE VALUE ADDUCED AGAINST APPELLEE MALLIA.
 V. THE TRIAL COURT ERRED IN EXCLUDING PROBATIVE EVIDENCE RELEVANT TO WALTER BURTON'S CLAIMS AGAINST APPELLEES.
 II.
Before addressing the merits of Burton's arguments, we note the applicable standard of review of directed verdicts. Civ.R. 50(A)(4) provides as follows:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
This rule requires the trial court to give the non-moving party the benefit of all reasonable inferences that may be drawn from the evidence. Keeton v. Telemedia Co. of Southern Ohio (1994),98 Ohio App.3d 405, 408, citing Broz v. Winland (1994), 68 Ohio St.3d 521,526. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. O'Day v. Webb (1972),29 Ohio St.2d 215, paragraph four of the syllabus. See, also,Strother v. Hutchinson (1981), 67 Ohio St.2d 282, 284-285.
Although a motion for directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co.
(1982), 69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses.Id. at 68-69. A motion for a directed verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Howell v. Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13; Keeton,98 Ohio App.3d at 409.
 III.
R.C. 4505.04(B) directs that "no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle * * * unless evidenced [b]y a certificate of title * * *." For years, this statute and its predecessor, G.C. 6290-4, were interpreted to require a motor vehicle owner to produce a certificate of title to prove ownership in actions arising from collisions as well as in replevin and title actions. See Mielke v. Leeberson (1948),150 Ohio St. 528; Kelley Kar Co. v. Finkler
(1951), 155 Ohio St. 541.
The Supreme Court of Ohio's interpretation became less restrictive when the court examined the legislative purpose of the act. State v. Rhodes (1982), 2 Ohio St.3d 74, 75-76. In Rhodes, a criminal case involving theft of a motor vehicle, the court held that R.C. 4505.04 only achieves its purpose "where a plaintiff is asserting some right pertaining to his allegedly owned automobile and defendant's defense or claim is based upon a claimed right, title or interest in the same automobile." Id. at 75-76. The court extended this rationale to civil cases in Smithv. Nationwide Nut. Ins. Co. (1988), 37 Ohio St.3d 150, 151-152. In Smith, the court observed that R.C. 4505.04 was relevant only to determine competing claims to a motor vehicle, such as ownership issues regarding importation of vehicles, rights between lienholders, rights of bona fide purchasers, and instruments evidencing title and ownership rights of motor vehicles. Id.
In this case, Elsea and Mallia's general denial of Burton's complaint does not raise a bona fide issue of competing claims to title or ownership of Burton's mobile home. Elsea and Mallia do not specifically contend that they have any competing interest, claim, or title to Burton's defective mobile home, as envisioned in R.C. 4505.04. Requiring Burton to produce a certificate of title in this case, where no bona fide dispute exists regarding his ownership, would permit Elsea and Mallia to evade liability. The legislative intent behind R.C. 4505.04 was not to protect defendants where there is no legitimate dispute about who owns title to the vehicle. Therefore, we find that the trial court erred by directing a verdict against Burton on the grounds that Burton failed to produce a certificate of title at trial.
Accordingly, we sustain Burton's first assignment of error.
 IV.
In his second assignment of error, Burton asserts that the trial court erred in directing a verdict in favor of Elsea on the basis of the parol evidence rule and the contents of the disputed contract. Burton contends that the court did not properly apply the parol evidence rule when it determined that certain oral statements were inadmissible and that certain written statements constituted terms of the disputed contract. Additionally, Burton contends that the trial court construed the facts in the light most favorable to Elsea, rather than in a light most favorable to him. Finally, Burton contends that the parol evidence rule only excludes evidence offered to alter the terms of a contract; therefore, the trial court should have permitted Burton to present extrinsic evidence in support of his claims that Elsea violated consumer protection laws.
The terms of a contract, particularly those which limit the liability of the drafter, generally are construed against the drafter. Glaspell v. Ohio Ecison Co. (1987), 29 Ohio St.3d 44,47. The parol evidence rule is a rule of substantive law which provides that extrinsic evidence is not admissible to contradict or vary the terms of an unambiguous contract. Ed Schory Sons,Inc. v. Soc. Natl. Bank (1996), 75 Ohio St.3d 433, 440. The purpose of the parol evidence rule is not to exclude all extrinsic evidence in contract cases, but rather to exclude extrinsic evidence which varies, alters, or modifies the terms of the written agreement.Id. at 440; Shepherd v. United Parcel Serv. (1992),84 Ohio App.3d 634, 644. The rule derives from the presumption that parties to a contract express their intent through the language they employ in the written agreement, particularly in the instance that the written contract expressly states that it constitutes a complete and accurate integration of the parties' intent. See Shifrin v. Forest City Ent., Inc. (1992),64 Ohio St.3d 635, 638. Where a document is unclear or ambiguous, parol evidence is admissible for purposes of determining the intent of the parties and clarifying unclear or ambiguous provisions. Graham v. Drydock Coal Co. (1996), 76 Ohio St.3d 311,313.
Thus, in determining whether parol evidence is admissible to clarify the terms of a written contract, the court must first identify the contract and evaluate, whether it is ambiguous on its face. In this case, Burton contends that the contract consists of the Purchase Agreement alone. Elsea, in contrast, contends that the trial court correctly based its ruling on the presumption that the contract consists of the Purchase Agreement, the red "As-Is" stamp, and the Limited Mobile Home Warranty.
Burton testified that, though he did not read the Purchase Agreement before he signed it, he is certain that the agreement did not have a large, red "As-Is" stamp when he signed it. Burton's testimony is supported by the fact that the red stamp appears only on Elsea's copy of the agreement. Construing these facts in the light most favorable to Burton, we must presume that the Purchase Agreement did not contain the "As-Is" stamp when Burton signed it. Therefore, the trial court erred in basing its determination that the contract was unambiguous in part on the language of the "As-Is" clause.
Burton also notes that the Purchase Agreement contains an integration clause which provides that the four corners of the document contain the entire agreement between the parties. Thus, Burton contends that any statements not contained in the Purchase Agreement constitute extrinsic evidence only admissible to clarify the terms contained in the Purchase Agreement. Therefore, Burton reasons that both Elsea's oral promises regarding the home and the Limited Mobile Home Warranty constitute parol evidence admissible to clarify their intent. In contrast, Elsea asserts that the Limited Mobile Home Warranty is part of the contract despite the integration clause, and that the Limited Mobile Home Warranty provides terms which relieve the contract of any ambiguity.
The integration clause in the Purchase Agreement states, "[t]his agreement contains the entire understanding between you and me and no other representation or inducement, verbal or written, has been made which is not contained in the contract." Thus, Elsea and Burton assented to the Purchase Agreement as a complete and accurate integration of their intent. See Ed Schory Sons, supra, at 440. Given the plain language of the clause, combined with the canon directing us to construe contracts against their drafters, we find that the integration clause in the Purchase Agreement excludes the Limited Mobile Home Warranty from the contract. Thus, the trial court erred in basing its determination that the contract was unambiguous in part upon the language of the Limited Mobile Home Warranty.
Elsea maintains that even if the red "As-Is" stamp and the Limited Mobile Home Warranty language are excluded from the contract, the trial court did not err by excluding evidence of Elsea's oral statements to Burton because the Purchase Agreement itself is unambiguous. Specifically, Elsea contends that the language preceding the "any defect" language clearly limits Elseas assumption of responsibility to defects in the water lines or furnace. In addition, we note that the reverse side of the Purchase Agreement explicitly states that used homes carry no express warranties.
Pursuant to the Uniform Commercial Code, when the words or actions leading to the formation of a contract include language creating an express warranty and language negating or limiting an express warranty, the language shall be construed as consistent whenever reasonable. R.C. 1302.29(A). However, subject to the limitations of the parol evidence rule, the negation language is inoperative to the extent that it is inconsistent with express warranty. R.C. 1302.29(A). Thus, negation language contained within a unambiguous written contract intended as the final expression of the parties' agreement, to the extent consistent with the rest of the written agreement, will operate even if the parties reached a prior oral agreement that included an express warranty. See Haynes v. Ballas Buick-GMC Truck (Dec. 21, 1990) Lucas App. No. L-89-168, unreported, citing White Summers, Uniform Commercial Code (1980) 434, 434-437, Section 12-4.
In this case, the parties explicitly stated in writing that the Purchase Agreement contained their entire agreement. The Purchase Agreement includes the furnace and water line warranties on the front and the "no express warranty" language on the back. The furnace and water line warranties are inconsistent with the negation language. Therefore, pursuant to R.C. 1302.29, the negation language is inoperative as to the furnace and water lines. However, the negation language is not inconsistent with the remainder of the written agreement. Therefore, it operates to exclude all warranties, including express oral warranties that were not made part of the final written agreement, on items other than the furnace and water lines.
Sales under the Uniform Commercial Code automatically carry an implied warranty that the goods sold "are fit for the ordinary purposes for which such goods are used." R.C. 1302.27(B)(3). A disclaimer of an implied warranty requires explicit, conspicuous language. R.C. 1302.29. R.C. 1301.01 defines "conspicuous language" as follows:
 A term or clause is conspicuous when it is so written that a reasonable person * * * ought to have noticed it. A printed heading in capitals * * * is conspicuous. Language in the body of a form is `conspicuous' if it is in larger or other contrasting type or color.
R.C. 1301.01(J). Elsea did not explicitly disclaim the implied warranty in this case. In fact, the reverse side of the Purchase Agreement plainly states Elsea's intent not to make any representation regarding implied warranties.
Construing the facts in a light most favorable to Burton, we find that Elsea gave implied warranties on Burton's mobile home, and that it did not properly disclaim the implied warranties. Thus, we find that, even if the Purchase Agreement is unambiguous, a jury question exists regarding whether Elsea violated its duties under the implied warranties. Therefore, we find that the trial court erred by entering a directed verdict.
Finally, Elsea does not contest Burton's assertion that the parol evidence rule applies only to contract disputes, not to claims that a dealer committed a deceptive act in violation of the CSPA. Instead, Elsea attacks the credibility of Burton's testimony that Elsea's representatives made oral promises. However, if believed, Burton's testimony establishes that Elsea's representatives used statements to give Burton a false impression regarding features of the mobile home and failed to integrate material representations and promises into the written sales contract. These acts constitute deceptive sales practices as defined under Ohio Adm. Code 109:4-3-16(3) and (22). A dealer who commits a deceptive sales practice is guilty of violating the CSPA, and the consumer is entitled to remedies. R.C. 1345.02(A) and 1345.09. Because questions of credibility are reserved for the trier of fact, and because the parol evidence rule only excludes evidence offered to vary the terms of a contract, we find that the trial court erred as a matter of law in taking the question of whether Elsea violated the CSPA from the jury.
In sum, we find that the trial court erred when it determined that the disclaimer language in the red "As-Is" stamp and the Limited Mobile Home Warranty constituted terms of the contract. The language of the Purchase Agreement is ambiguous, and therefore the court should have permitted the parties to introduce extrinsic evidence of their contractual intent. The parties' intent is a question of fact. The question of whether Elsea committed deceptive sales practices is also a question of fact. In a motion for a directed verdict, all questions of fact must be resolved in favor of the non-moving party. Therefore, in this case the trial court erred by determining that Burton was bound by the disclaimers contained in the red "As-Is" stamp and the Limited Mobile Home Warranty. Instead, the trial court should have permitted the jury to determine the parties intent based on the Purchase Agreement as clarified by the alleged oral statements by Elsea and the language of the red "As-Is" clause and the Limited Mobile Home Warranty. Additionally, the trial court should have permitted the jury to determine whether Elsea engaged in sales practices which violate the CSPA.
Accordingly, we sustain Burton's second assignment of error.
 V.
In his third assignment of error, Burton contends that the trial court erred in directing a verdict in favor of Elsea on the basis that Burton presented no evidence of substantial probative value in his favor. Burton asserts that he produced sufficient credible evidence which would enable a jury to rule in his favor on his claims that Elsea breached express and implied warranties under the UCC and his claim that Elsea engaged in deceptive sales practices in violation of the CSPA.
First, Burton asserts that the mobile home Elsea sold him was subject to an implied warranty under the UCC. All contracts for the sale of goods subject to the UCC (including mobile homes) contain an implied warranty that the goods shall be merchantable.
R.C. 1302.27(A). Merchantable goods must be "fit for the ordinary purposes for which such goods are used." R.C. 1302.27(B)(3). To exclude or disclaim an implied warranty, the written contract must conspicuously exclude the warranty using language such as "as is," "with all faults," or "no warranties beyond the face of this document." R.C. 1302.29(B) and (C).
In this case, the parties agree that Elsea is a seller subject to the UCC and that mobile homes constitute goods under the UCC. The ordinary purpose of a mobile home is to provide shelter for the inhabitant and his possessions. Burton produced evidence that, from the first rainfall after he purchased the home, it did not shelter or protect him from the rain. Burton also testified that the contract he signed did not have a large red "As-Is" stamp on it. Additionally, as established in our discussion of Burton's second assignment of error, the Limited Mobile Home Warranty clause is not part of the sales contract. Thus, Burton produced sufficient credible evidence that the mobile home he purchased from Elsea was not fit for the ordinary purpose of providing shelter from the weather. Though Elsea asserted that it disclaimed any implied warranty, Burton produced evidence that Elsea did not disclaim the warranty in the manner required by R.C. 1302.29. Therefore, the record contains sufficient credible evidence upon which a jury could have ruled in Burton's favor on his claim that Elsea breached an implied warranty, and the trial court erred as a matter of law by removing the issue from the jury's consideration.
Burton also asserts that Elsea breached express warranties.
However, as we determined in examining Burton's second assignment of error, Elsea used explicit, conspicuous language to disclaim its express warranties. Therefore, despite Burton's evidence that Elsea may have offered an express warranty in negotiations, Burton did not present evidence upon which his claim for breach of warranty could prevail. Accordingly, we find that the trial court did not err in directing a verdict in favor of Elsea on Burton's claim for breach of express warranties.
Finally, Burton asserts that he produced sufficient credible evidence that Elsea committed deceptive sales practices in violation of the CSPA. Burton testified that Webb told him that the home was in "A-1" condition. Burton testified that he asked Raymond about whether the roof leaked, and that Raymond replied that the leak in the roof had been fixed. Burton testified that he told Jones he would purchase the home if Jones agreed to make all the repairs Burton and Raymond discussed. Elsea responded by attacking the credibility of Burton's testimony. In the context of a motion for a directed verdict, all factual disputes must be resolved in favor of the non-moving party.
Burton's testimony, if believed, establishes that Elsea representatives used statements to give Burton a false impression regarding features of the mobile home and failed to integrate material representations and promises into the written sales contract. These acts constitute deceptive sales practices as defined under Ohio Admin. Code 109:4-3-16(3) and (22). A dealer who commits a deceptive sales practice is guilty of violating the CSPA, and the consumer is entitled to remedies. R.C. 1345.02(A) and 1345.09. Because questions of credibility are reserved for the trier of fact, we find that the trial court erred in taking the question of whether Elsea violated the CSPA from the jury.
Accordingly, we find that the trial court erred in finding that Burton failed to produce sufficient credible evidence in support of his claims for breach of implied warranties and his claim for deceptive sales practices. However, the trial court did not err in its finding with respect to Burton's claim for breach of express warranties. Thus, we sustain in part and overrule in part Burton's third assignment of error.
 VI.
In his fourth assignment of error, Burton asserts that the trial court erred in directing a verdict in favor of Mallia on the basis that Burton failed to produce evidence of substantial probative value to prove that Mallia violated the CSPA, breached his contract with Burton, and negligently failed to warn Burton about the severity and potential consequences of the dip in his roof.
 A.
Burton asserts that Mallia violated the CSPA by failing to register his business name and by failing to provide Burton with a written estimate for the cost of repairing his roof. Due to Mallia's deceptive trade practice, Burton asserts that he is entitled to treble damages and attorneys fees.
Pursuant to R.C. 1345.09, a consumer may rescind a transaction or recover damages where the retail supplier engaged in a violation of CSPA. Additionally, when an Ohio court has found that the act which the retail supplier engaged in violates R.C.1345.02, and the Ohio Attorney General placed the court decision in the public inspection file provided for in R.C. 1345.05(A)(3), the consumer may recover additional damages. R.C. 1345.09(B). Likewise, additional damages are available when the supplier violates R.C. 1345.02 by engaging in a practice deemed to be deceptive or unconscionable by a rule adopted by the attorney general pursuant to R.C. 1345.05(A)(3). Specifically, the consumer may rescind the transaction or recover "three times the amount of his actual damages or two hundred dollars, which ever is greater * * *." R.C. 1345.09(B). Pursuant to R.C. 1345.09, the court also may award attorney fees when the supplier intentionally committed the deceptive act. Einhorn v. Ford MotorCo. (1990), 48 Ohio St.3d 27, syllabus.
In 1983, the Ohio Attorney General added an Ohio court decision to its public inspection which found that the failure to register a fictitious business name with the Ohio Secretary of State constitutes an unfair and deceptive business practice within the meaning of R.C. 1345.02. Celebrezze v. Lloyd (May 23, 1983), Franklin C.P. No. 82CV06-3184, unreported. See, also, Kuhn v.Tracy (Jan. 26, 1995), Muskingum C.P. No. CH94-0972, unreported. The Ohio Attorney General also has adopted a rule providing that the failure to provide a customer with a written estimate is a deceptive trade practice pursuant to R.C. 1345.05(A)(3). See Ohio Adm. Code 109:4-3-13(A). Mallia concedes that he neither registered his business name nor provided a written estimate to Burton. However, Mallia contends nonetheless that Burton is not entitled to relief because he did not act in bad faith or cause Burton to incur damages.
A consumer asserting a violation of the CSPA is not required to prove that the supplier engaged in a deceptive sales practice with the intent to deceive the consumer. Frey v. Vin Devers, Inc.
(1992), 80 Ohio App.3d 1, 6. However, if the supplier can demonstrate that the violation resulted from a bona fide error, which occurred despite the supplier's maintenance of procedures to avoid such errors, the consumer can not recover attorney fees or money exceeding the amount of his actual damages resulting from the violation. R.C. 1345.11; Einhorn, supra. If the supplier demonstrates that he acted in good faith and that the consumer incurred no actual damages, the consumer is not entitled to any monetary award. Zindle v. Hawks Appliance Service (Sept. 2, 1987), Summit App. No. 13016, unreported. However, if the supplier cannot demonstrate that the violation resulted from a bona fide error, the consumer is entitled at least to statutory damages. Dantzig v. Sloe (1996), 115 Ohio App.3d 64, 68.
In this case, Burton produced evidence that Mallia violated the CSPA by failing to register his business name and by failing to provide a written estimate. The trial court directed a verdict in Mallia's favor on the grounds that Burton failed to prove that Mallia acted in bad faith and failed to prove that he incurred damages. However, the question of Mallia's intent is relevant to Mallia's affirmative defense, not Burton's case in chief. See Frey at 6. Thus, the trial court erred by directing a verdict in favor of Mallia on the grounds that Burton produced no evidence of bad faith. Additionally, absent proof that Mallia's violation resulted from a bona fide error, Burton was not required to produce evidence of damages. Dantzig at 68. Thus, the trial court erred by entering a directed verdict on that basis as well.
 B.
Burton also claims that the trial court erred in directing a verdict in favor of, Mallia on Burton's claim for breach of contract. Burton asserts that he hired Mallia to stop the leak in the roof of his mobile home, while Mallia insists he only contracted to paint the roof. Burton further asserts that Mallia did not perform the contract (to repair the leak) in a workmanlike manner because the repair only lasted through two or three rainy days. Mallia contends that when Burton testified that he was pleased with the manner in which Mallia painted the roof, he admitted that Mallia performed the contract (to paint the roof) in a workmanlike manner.
In every contract for service, the failure to perform the service contracted for in a workmanlike manner constitutes the breach of an implied duty under the contract. Vistein v. Keeney
(1990) 71 Ohio App.3d 92, 104. As Mallia contends, Burton concedes that Mallia painted the roof in a workmanlike manner. However, Burton insists that Mallia failed to perform in a workmanlike manner by failing to repair the roof or inform Burton of the need to repair and the consequences of not repairing. Thus, whether Burton's claim for breach of contract succeeds depends upon the terms of the contract. The parties dispute the facts regarding what service Burton hired Mallia to perform. On a motion for a directed verdict, the court must construe all factual disputes in favor of the non-moving party. Therefore, we must presume that, as Burton testified, he hired Mallia to repair the leak in the roof. We also must presume that Burton's roof began leaking on the second or third rainy day after Mallia repaired it. Based on these facts, a reasonable person could find that Mallia breached his contract with Burton.
 C.
Finally, Burton asserts that Mallia negligently exacerbated the problems with his roof by painting it without informing Burton of the size of the dips in the roof and the potential consequences of painting over them. Burton concedes that Mallia informed him that the roof had a "little dip" in it. Mallia argues that he fulfilled his duty by informing Burton of the dip, and that Burton allowed the roof to deteriorate by ignoring the dip. Additionally, Mallia points out that Burton produced no evidence that the dip was so large when Mallia saw it that Mallia should have known the consequences of ignoring the dip.
To succeed on his claim for negligence, Burton must show that Mallia breached a duty and thereby caused Burton to incur damages. Whether the defendant had a duty is a question of law. Mussivand v.David (1989), 45 Ohio St.3d 314, 318; Blanton v. Pine CreekFarms (1995), 100 Ohio App.3d 677, 685. Once a plaintiff establishes that the defendant had a duty, whether the defendant breached that duty is a question of fact. Commerce Industry Ins.Co. v. Toledo (1989), 45 Ohio St.3d 96; Smith v.Cincinnati Gas Elec. Co. (1991), 75 Ohio App.3d 567, 569. The plaintiff must produce competent evidence sufficient to establish the existence of a breach in order to reach the jury. Stinson v.England (1994), 69 Ohio St.3d 451, 455. However, disputes as to both the conduct of the parties and the standard of care are questions for the jury. Strother v. Hutchinson (1981), 67 Ohio St.2d 282. Finally, the presence of affirmative defenses such as comparative negligence are questions of fact which should be preserved for the jury. Simmers v. Bentley (1992), 64 Ohio St.3d 642.
In this case, Burton asserts that he produced sufficient credible evidence to permit reasonable minds to find in his favor on the issue of whether Mallia breached a duty. The record shows that Mallia held himself out to be an professional mobile home repair person. Mallia does not deny that he owed Burton some duty, but claims that he discharged that duty by informing Burton that the roof had a "little dip" in it. Burton's mobile home repair expert testified that painting a leaking roof with a sealant will accelerate the deterioration of the roof by causing it to bear heavier weight loads and retain moisture longer. However, the expert also testified that a homeowner who notices rain accumulating on his roof (as Burton did after Mallia applied the sealant) should know he needs to take steps to remove the water. Burton testified that he siphoned water off his roof, but that at least some water almost always remained pooled on it.
We find that Burton produced sufficient credible evidence upon which a reasonable person could conclude that Mallia breached his duty of care as a professional repair person when he sealed the roof and caused water to began pooling in the dips. The evidence may also lead reasonable minds to conclude that Burton contributed to the problem by failing to remove the water effectively after he noticed it accumulating. Thus, this case presents jury questions on issues of breach of duty and comparative negligence.
Accordingly, we find that the trial court erred in directing a verdict in favor of Mallia on Burton's claims that Mallia violated the CSPA, breached a contract, and negligently caused the deterioration of Burton's roof. Therefore, we sustain Burton's fourth assignment of error.
 VII.
In his fifth assignment of error, Burton asserts that the trial court erred by excluding probative evidence regarding both Elsea and Mallia. Specifically, Burton challenges the trial court's exclusion of evidence pertaining to: (1) the retail value of the labor and materials used to repair Burton's home, (2) Burton's physical condition at the time he purchased the home, (3) Burton's financial ability to mitigate his damages by repairing the roof, and (4) the presence of opinions in the Ohio Attorney General's file identifying deceptive trade practices.
A trial court has broad discretion in the admission or exclusion of evidence, and so long as such discretion is exercised in line with the rules of procedure and evidence, its judgment will not be reversed absent a clear showing of an abuse of discretion with attendant material prejudice to its proponent.
Rigby v. Lake Cty. (1991), 58 Ohio St.3d 269, 271; State v.Hymore (1967), 9 Ohio St.2d 122, certiorari denied (1968),390 U.S. 1024. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219. When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court.Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
Relevant evidence generally is admissible as long as its probative value is not substantially outweighed by its potential prejudicial effect. Evid.R. 402 and 403(A). Evidence Rule 701 limits the admissibility of opinions by lay witnesses, but lay witnesses generally may testify to relevant, non-prejudicial matters within their personal knowledge. Evid.R. 602.
The trial court prevented Mullins from testifying about the cost of the materials and labor he put into repairing Burton's roof because Burton did not list him as an expert in pretrial discovery. Elsea and Mallia suggest that the evidence is also irrelevant because the trial court granted a directed verdict. However, Elsea and Mallia's reasoning is circuitous; a directed verdict based in part on plaintiff's failure to produce evidence of damages cannot serve as justification for an earlier refusal to admit evidence of damages. We find that the evidence is relevant to ascertaining Burton's damages and that Burton's damages are of consequence to his claims. Moreover, we find that because Mullins personally donated the materials and labor used to repair Burton's roof, he had personal knowledge of the cost. Thus, the trial court excluded relevant evidence which Mullins was qualified to give as a lay witness. We find that the trial court's exclusion of Mullins' testimony regarding the cost of the repairs was arbitrary and unreasonable.
Burton also sought to introduce evidence that he was undergoing treatment for leukemia at the time he purchased his home from Elsea. Burton asserts that such evidence was relevant to establish his lack of bargaining power as compared to Elsea, and hence to establish that Elsea violated the CSPA. Elsea asserts that evidence of Burton's leukemia is prejudicial in its potential to evoke sympathy in the jury. We cannot say that the trial court's determination that the prejudicial effect of Burton's leukemia outweighs its probative value was arbitrary, unreasonable or unconscionable.
Burton also contests the trial court s repeated refusal to admit evidence establishing his financial inability to mitigate his damages. Despite Burton's requests, Elsea and Mallia refused to state the grounds for their objections, and the trial court refused to state the basis for its rulings. The trial court did, however, permit Burton to proffer evidence of Burton's financial situation, thus preserving the issue for appeal. See Evid.R. 103(A)(2). Burton asserts that the evidence he proffered, testimony about his financial ability to pay for roof repairs, was relevant to prove that he mitigated his damages. Elsea and Mallia do not challenge the relevancy of this evidence. Rather, they assert that any error in refusing to admit the evidence was harmless. Additionally, they assert that the admissibility of mitigation evidence is moot because the trial court granted a directed verdict in their favor.
Because we have determined that the trial court erred by granting a directed verdict, the admissibility of Burton's financial ability to mitigate is not moot. Additionally, because we have already determined that this case must be remanded to the trial court for a new trial, we need not examine whether the error was harmless. We find that the trial court acted arbitrarily and unreasonably by excluding relevant evidence.
Finally, Burton asserts that the trial court erred by refusing to admit cases from the Ohio Attorney General's public inspection file as exhibits. Burton asserts that the cases constitute evidence under R.C. 1345.09. R.C. 1345.09(B) provides:
 Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code * * * or an act or practice determined by a court of this state to violate section 1345.02
or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover * * * three times the amount of his actual damages or two hundred dollars, whichever is greater * * *.
Burton proffered certified copies of court decisions made available for public inspection to prove his right to recover treble damages. Elsea and Mallia argue that court decisions constitute law, and that the proper method of conveying those court decisions is via jury instructions. We agree. By placing a court decision in the public inspection file, the Ohio Attorney General gives the decision the force of a regulation. Just as it would be improper to submit a copy of the Ohio Administrative Code to the jury, the court should not provide the jury with a case and ask it to determine rules of law.
Accordingly, we sustain Burton's fifth assignment of error to the extent that the trial court erred by excluding relevant evidence, particularly the cost of repairs and Burton's financial ability to mitigate his damages. We overrule Burton's fifth assignment of error with respect to the trial court's decision to exclude evidence of Burton's leukemia. Additionally, we overrule Burton's fifth assignment of error with respect to the trial court's decision to prevent Burton from introducing cases as evidentiary exhibits.
 VII.
In conclusion, we find that the trial court erred by directing a verdict in favor of Elsea and Mallia on the grounds that Burton failed to produce a certificate of title. Further, we find that the trial court erred in concluding that parol evidence was not admissible to clarify the contract between Elsea and Burton. We also find that the trial court erred in holding that Burton failed to produce sufficient credible evidence upon which a reasonable jury could find in favor of Burton and against Elsea and Mallia, except with regard to Burton's claim against Elsea for breach of express warranties. Finally, we find that the trial court abused its discretion by excluding evidence of Burton's ability to mitigate and the amount of his damages; but the court did not err by excluding evidence of Burton's leukemia and preventing Burton from using court opinions as exhibits.
Accordingly, we reverse the judgment of the trial court and remand this case to the trial court for further proceedings consistent with this opinion.
JUDGMENT REVERSED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J.: Concurs in Judgment and Opinion as to A/E I, II, III V. Concurs in Judgment Only as to A/E IV.
Harsha, J. Concurs in Judgment Only.
For the Court
BY: Roger L. Kline, Presiding Judge.