FREY et al., Appellants,

v.

VIN DEVERS, INC., Appellee, et al.

[Cite as *Frey v. Vin Devers, Inc.* (1992), 80 Ohio App.3d 1.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–191.

Decided May 8, 1992.

2

*Jim Miller,* for appellants.

*William R. Lindsley,* for appellee.

---

*Per Curiam.*

This case comes on appeal from a judgment of the Lucas County Court of Common Pleas, which granted judgment in favor of defendant-appellee, Vin Devers, Inc. ("Vin Devers"), and dismissed the complaint of plaintiffs-appellants, Virginia L. Frey and Robert A. Frey ("Freys").[1] The Freys filed a timely notice of appeal of that judgment and assert as error:

"1. It was error for the trial court to conclude as a matter of law that defendant's request for plaintiffs to pay the difference between the erroneous lease payoff balance quoted to defendant by GMAC and the correct lease balance was not a raise or attempt to raise the actual purchase of the Dodge Caravan van within the purview of Ohio Administrative Code § 109:4–3–16(B)(17) or any other subsections of said section/rule.

"2. It was error for the trial court to conclude as a matter of law that the defendant did not commit an unfair or deceptive act in connection with this consumer transaction.

"3. It was error for the trial court to conclude as a matter of law that defendant acted in good faith as defined in Ohio Revised Code § 1345.11.

"4. The trial court's nineth [*sic*] finding of fact that defendant paid GMAC from defendant's own funds the $984.87 additional monies owed to GMAC is against the manifest weight of the evidence and is a material error."

On January 12, 1989, the Freys went to Vin Devers to conclude a transaction whereby they would lease a Dodge Caravan van. Prior to that date, the Freys had negotiated the terms of the agreement. The terms included a "payout" by Vin Devers to General Motors Acceptance Corporation ("GMAC") of the lease on Mrs. Frey's automobile, a Toyota Corolla, which she was trading in to Vin Devers in order to finance the new lease agreement. After signing the lease agreement, the Freys took possession of the Dodge and turned the Toyota over to Vin Devers. Approximately two to three weeks later, the Freys returned to Vin Devers for license plates. At that time, Donald R. Leach, Jr., senior business manager of Vin Devers, informed the Freys that the pay-out amount reported to Vin Devers by GMAC prior to the sale was

---

1. Various documents, including the trial court's judgment entry, refer to appellants as Robert and Virginia "Frye". Nonetheless, the signed lease agreement and other documents indicate that appellants' surname is "Frey." We have elected to use "Frey" because of the lease agreement.

$984.87 less than the actual amount listed by GMAC as owing on Mrs. Frey's lease. Leach asked the Freys to pay GMAC the difference owed so that Vin Devers could obtain the title to the Toyota from GMAC. The Freys refused, offered to take their Toyota back, but left the dealership in the Dodge. A short time later, Candy Morel, who worked in the Vin Devers business office, contacted the Freys and inquired as to whether they had made any arrangements to pay the $984.87. The Freys stated that they had not. It is undisputed that after this call, Vin Devers never communicated with the Freys on this matter or on any other matter.

On March 3, 1989, GMAC informed the Freys that they owed GMAC $984.87 and that GMAC was retaining their $200 security deposit on the Toyota lease as payment toward that amount. On April 14, 1989, Vin Devers sent GMAC $784.87, the difference between the amount of the payout owed and the security deposit. Subsequently, Vin Devers received a letter, dated April 18, 1989, from the Freys' attorney, which indicated that he was investigating the dispute as to possible violations of the Ohio Consumers Sales Practices Act, R.C. Chapter 1345 ("OCSPA"), as well as a claim for emotional distress suffered by Mrs. Frey as a result of the dispute. The letter implied that the Freys might pursue a cause of action seeking triple damages and attorney fees, as provided for under the OCSPA. Vin Devers received a second letter, dated August 14, 1989, from counsel for the Freys, in which he stated that the Freys had given him the authority to seek rescission of the lease agreement.

On April 25, 1990, the Freys filed their complaint against both Vin Devers and GMAC and alleged a breach of contract, violation of the OCSPA, and intentional infliction of emotional distress. The Freys requested attorney fees. Prior to a trial on the merits, the Freys dismissed, with prejudice, their claims against GMAC and elected to pursue the remedy of rescission under the OCSPA.

At a trial to the bench, held on April 22, 1991, it was disclosed that the Freys made their lease payments and drove the Dodge for the entire period from January 1989 to the date of trial and that the current mileage on that vehicle exceeded 40,000 miles. It was revealed that the mistake in the pay-out amount was the result of contacting the wrong office in Pittsburgh, Pennsylvania. The amount, $4,167, obtained from that source was the amount owed on the lease of a car in the name of Robert Frey. The agreement for the Toyota, which was leased in Mrs. Frey's name, was in a different GMAC office in another part of Pittsburgh. Although Mrs. Frey insisted she had provided the salesperson, Roxanne Deckmann, with a stub from her lease payment book at the time the pay-out was determined, both Deckmann and Leach denied that Frey ever did so. No such stub or copy thereof was in Vin

Devers's records; the document containing the information needed to determine the pay-out on the Toyota contained only the words "Leased with GMAC in Pittsburgh," an address for a GMAC office in Pittsburgh obtained via telephone by Morel, and an account number which did not match the account number on Mrs. Frey's payment stub.

On May 6, 1991, the trial court entered final judgment and made the following pertinent findings of fact and conclusions of law:

"Findings of Fact

"9. Defendant paid G.M.A.C. from its own funds the $984.87 additional monies owed to it and received the title to the Toyota and subsequently sold same.

"10. Defendant never demanded that plaintiffs return the Dodge Caravan Van to it and has not demanded repayment of the $984.87.

"11. Plaintiffs have not incurred any losses other than attorney fees. " * * *

"Conclusions of Law

"1. Defendant has not committed an unfair or deceptive act in connection with this consumer transaction. " * * *

"6. Defendant acted in good faith as defined in Ohio Revised Code, Section 1345.11 when it made its computations in part based on the error made by G.M.A.C. " * * *

"8. Defendant's request for plaintiffs to pay the difference between the erroneous lease pay-off balance quoted to it by G.M.A.C. and the correct lease balance was not a raise or an attempt to raise the actual purchase price of the Dodge Caravan van within the purview of Ohio Administrative Code, Section 109:4–3–16(B)(17) or any other sub-sections of said section/rule."

The Freys' first, second and fourth assignments of error shall be considered together. Initially, the Freys assert that the trial court erred in holding that Vin Devers did not commit an unfair or deceptive sales act or sales practice in violation of Ohio Adm.Code 109:4–3–16(B)(17). They further contend that, even if the conduct of Vin Devers does not constitute a violation of that administrative rule, it is an unfair and deceptive act within the meaning of R.C. 1345.02. Finally, they argue that the court below erred in finding that Vin Devers paid GMAC $984.87 rather than $784.87.

R.C. 1345.02(A) includes the lease of goods as a consumer transaction within the meaning of the OCSPA. The definition of "supplier" includes,

*inter alia,* any person which is engaged in a business effecting or soliciting consumer transactions. R.C. 1345.01(C). Under the OCSPA, a corporation is a "person." R.C. 1345.01(B). R.C. 1345.02(A) provides:

"No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction."

R.C. 1345.02(B) contains a representative list of unfair and/or deceptive practices. Pursuant to R.C. 1345.06(B)(2), the Attorney General of Ohio is authorized to adopt, amend and repeal substantive rules which define, with reasonable specificity, any act or practice that violates R.C. 1345.02(A). Courts have also held a variety of acts to be unfair or deceptive. See, *e.g., Celebrezze v. United Research, Inc.* (1984), 19 Ohio App.3d 49, 19 OBR 131, 482 N.E.2d 1260 (suing consumer in jurisdiction other than place of transaction); *Brown v. Lyons* (1974), 43 Ohio Misc. 14, 72 O.O.2d 216, 332 N.E.2d 380 (refusal to honor express warranty). Ohio Adm.Code 109:4-3-16(B)(17) states that it is an unfair or deceptive act upon the part of a dealer "to raise or attempt to raise the actual purchase price of a motor vehicle to a specific consumer." The "purchase price" means the total amount the consumer is required to pay the dealer under the contract and includes any allowance for a trade-in or other similar compensation. Ohio Adm.Code 109:4-3-16(A)(5). Although the substantive rule uses terminology related to the sale of an automobile, the lease of an automobile is clearly a consumer transaction within the meaning of the Act; therefore, an unfair or deceptive practice committed in a transaction involving the lease of an automobile is within the scope of Ohio Adm.Code 109:4-3-16(B). See, generally, Annotation (1989), 89 A.L.R.3d 399, Section 10. In addition, a consumer is not required to demonstrate that a supplier intended to be unfair or deceptive. *Thomas v. Sun Furniture & Appliance Co.* (1978), 61 Ohio App.2d 78, 11 O.O.3d 26, 399 N.E.2d 567; *Riley v. Enterprise Furniture Co.* (1977), 54 Ohio Misc. 1, 7 O.O.3d 271, 375 N.E.2d 821. It is how the consumer views the act or statement which determines whether it is unfair or deceptive. *Brown v. Bredenbeck* (1975), 2 O.O.3d 286; *D & K Roofing, Inc. v. Pleso* (1991), 77 Ohio App.3d 181, 601 N.E.2d 561. If the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive. *Brown, supra,* at 287. Here, as part of the trade-in, Vin Devers agreed to pay the amount owed to GMAC on the lease for the Toyota. After discovering that the pay-out amount was in error, Vin Devers told the Freys that they were responsible for the pay-out difference. The Freys viewed this as an attempt to raise the lease price of the Dodge. Moreover, it was unfair

and deceptive because the Freys believed that Vin Devers had agreed to pay the amount owed on the Toyota lease and were then informed, after the fact, that they were responsible for a part of that payment. Cf. *Cardwell v. Tom Harrigan Oldsmobile, Inc.* (June 27, 1984), Montgomery App. No. CA–8119, unreported, 1984 WL 5351 (requiring an auto purchaser to pay an additional $500 due to dealer error violated R.C. Chapter 1345). Accordingly, the trial court did err in finding that Vin Devers did not engage in an unfair or deceptive practice. Finally, the fact that Vin Devers paid GMAC $784.87—not $984.87—is uncontroverted. For these reasons, the Freys' first, second and fourth assignments of error are found well taken.

█ In their third assignment of error, the Freys contend that the trial court erred in finding that Vin Devers acted in good faith as defined in R.C. 1345.11(A).

After a careful reading of R.C. 1345.11(A) and related statutes, this court concludes that R.C. 1345.11(A) cannot be used as a basis for the lower court's entire judgment.

█ R.C. 1345.09(A) provides that where a supplier violates R.C. 1345.02 the consumer may recover either his damages or rescind the consumer transaction. The consumer is required to elect between requesting rescission or damages prior to trial. *Williams v. Banner Buick, Inc.* (1989), 60 Ohio App.3d 128, 574 N.E.2d 579. A trial court has no discretion to elect between the two. *Bierlein v. Alex's Continental Inn, Inc.* (1984), 16 Ohio App.3d 294, 16 OBR 325, 475 N.E.2d 1273. R.C. 1345.11(A) imposes limitations on a supplier's liability. That statute provides that where a supplier can demonstrate, by a preponderance of the evidence, that its violation was the result of a *bona fide* error which occurred despite the maintenance of procedures reasonably adopted to avoid the error, (1) civil penalties in an action brought by the Attorney General of Ohio cannot be imposed, or, (2) in a suit brought by the consumer, attorney fees cannot be imposed and the monetary amount awarded cannot exceed the consumer's actual damages. Under the OCSPA, the word "damages" is a legal term of art which characterizes the remedy elected by the consumer and is distinguished from "rescission." See, *e.g.*, R.C. 1345.09(A) and (B). That is, if a consumer transaction is rescinded, the return of the purchase (lease) price to the consumer does not constitute "damages" under R.C. Chapter 1345. Baldwin's Ohio Consumer Law (2 Ed. Herdeg Ed.1989), Section 3.06(A). In the instant case, the Freys elected the remedy of rescission of the lease agreement and requested attorney fees. Thus, R.C. 1345.11(A) could be applied only to deny the claim for attorney fees. Accordingly, this court must conclude that the trial court did err when

it applied R.C. 1345.11(A) to determine that Vin Devers had acted in good faith. The Freys' third assignment of error is found well taken.

■ The judgment of the Lucas County Court of Common Pleas must be reversed as to the specific findings challenged by the Freys. Nonetheless, the Freys are not entitled to a judgment on their complaint. A reading of the trial court's judgment entry discloses that its judgment was based upon the fact that the court believed the Freys had suffered no "actual damage," other than attorney fees, as a result of the violation. Again, because of its focus on "damages," the lower court failed to address the main issue in this case—whether the Freys were entitled to a rescission of the consumer transaction. The parties argue the issue of rescission on appeal. Furthermore, sufficient evidence was adduced at trial to determine whether the Freys were entitled to rescission. We have reviewed this evidence and the parties' arguments and find that the trial court reached the right result for the wrong reason. *Agricultural Ins. Co. v. Constantine* (1944), 144 Ohio St. 275, 284, 29 O.O. 426, 430, 58 N.E.2d 658, 663.

R.C. 1345.09 provides, in relevant part:

"For a violation of Chapter 1345. of the Revised Code, a consumer has a cause of action and is entitled to relief as follows:

"(A) Where the violation was an act prohibited by section 1345.02 or 1345.03 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover his damages.

" * * *

"(C) In any action for rescission, revocation of the consumer transaction must occur within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction."

Because the Freys elected to seek rescission of the lease agreement rather than sue for damages, their revocation of this consumer transaction must have occurred within a reasonable time after discovery and before any substantial change in the condition of the leased Dodge. *Cypher v. Bill Swad Leasing Co.* (1987), 36 Ohio App.3d 200, 521 N.E.2d 1142. To be effective the revocation must be unequivocal. *Peterman v. Waite* (Nov. 10, 1980), Knox App. No. 79-CA-19, unreported. See, also, *Konicki v. Salvaco, Inc.* (1984), 16 Ohio App.3d 40, 16 OBR 43, 474 N.E.2d 347, construing R.C. 1302.66(B), a provision similar to R.C. 1345.09(C). In the case before us, the Freys discovered the "unfair or deceptive practice" by, at the latest, the end of January. Although they did state that they would take their Toyota back, they then left Vin Devers in the Dodge. The title to the Dodge was turned

over to the lessor, First National Bank of Toledo, by Vin Devers, *i.e.*, Vin Devers did not withhold the title. All dealings thereafter by the Freys were with First National Bank. The Freys made their lease payments per the agreement and continued using the Dodge as transportation. It was not until August 14, 1989, over six months after discovering the alleged violation of R.C. 1345.02 that the Freys first mentioned rescission of the contract. By that time, the vehicle had been driven extensively. Suit was not filed until April 1990. The complaint sought relief for both rescission and damages. It was not until April 22, 1991, that the Freys, in their trial brief, specifically elected the remedy of rescission rather than damages. Under these facts, Vin Devers was notified of the revocation of the consumer transaction, at the earliest, on August 18, 1989. This case does not involve a deceptive statement as to the condition of or any defects in the Dodge. The Freys were cognizant of the deceptive practice within a short time after delivery. For that reason, we find that revocation was not effected within a reasonable time and before a substantial change in the condition of the leased vehicle.

The judgment of the Lucas County Court of Common Pleas is reversed as to Findings of Fact Nos. 9 and 11 and Conclusions of Law Nos. 1, 6 and 8. The judgment of the lower court is affirmed, but modified to add that the Freys failed to prove that they were entitled to a rescission of the contract. This cause is remanded to the trial court for entry of judgment. Court costs of this appeal are assessed against the Freys.

*Judgment accordingly.*

GLASSER and MELVIN L. RESNICK, JJ., concur.

ABOOD, J., concurs separately.

ABOOD, Judge, concurring.

While I do not agree with the majority's analysis, I do agree that the trial court's judgment should be affirmed.

I believe that there was competent, credible evidence presented to support the trial court's finding that the dealer did not raise or attempt to raise the actual purchase price of the motor vehicle or engage in an unfair or deceptive act.