OPINION
Appellant's, Mike and Amy Lump, appeal the June 6, 2001 judgment entry of the Logan County Court of Common Pleas, granting partial summary judgment in favor of the appellee, Best Door Window, Inc., as to the claims involving alleged violations of the Ohio Consumer Sales Practices Act, Case No. 8-01-09. In addition, the Lumps appeal the June 8, 2001 judgment entry of the Logan County Court of Common Pleas, granting partial summary judgment in favor of the appellee, Modern Builders Supply, Inc., as to the claims involving alleged violations of the Ohio Consumer Sales Practices Act, Case No. 8-01-10. Pursuant to this Court's journal entry, dated August 1, 2001, and filed on August 2, 2001, these two appeals were consolidated.
Many of the facts of this case are in dispute. However, the general chronology of events leading to this litigation is as follows. The Lumps decided to build a home and hired builder, Wayne Lumbatis, as the general contractor for this project sometime in 1999. In an effort to save money, the Lumps agreed to paint and stain the interior of the home and to do the trim work, themselves. However, Mr. Lump wanted to have the labor that he was to do completed by February 2000, because of his schedule at work.
In the summer of 1999, Mr. Lump contacted Kevin Boone, president and general manager of Appellee Best Door Window, Inc. (hereinafter "Best"), about ordering windows for the home that Lumbatis was building for the Lumps. The parties discussed the ordering of windows several times over the next few months, and Boone eventually placed the order for windows, as well as related items, for the Lumps with co-appellee, Modern Builder Supply, Inc. (hereinafter "Modern"), in late November of 1999. The order form sent to Modern contained the sizes for the various windows. On November 29, 1999, Boone received a letter from Modern that confirmed Modern's receipt of the order.
After placing the order, Boone met with Lumbatis at the construction site, and the two discussed the sizes of the various windows. Lumbatis recorded each window's size on the blueprints for the home according to the dimensions provided to him by Boone. The reason for doing so was that Lumbatis needed to know what size to make the rough openings in the house for the windows. Lumbatis also informed the parties that the windows needed to meet the applicable egress codes in order to pass the building inspection.
The Lumps maintain that prior to ordering the windows, Mr. Lump expressed to Boone the need for the windows to arrive quickly so that he could do the work that he was supposed to do inside of the house. According to Mr. Lump, Boone told him that the windows would arrive by December 13, 1999. However, this date was not written on the order form placed with Modern by Boone. Boone, while not admitting to providing a firm delivery date to Mr. Lump, did admit that this date coincided with the normal delivery time for such an order.
When none of the windows or related items arrived on December 13, 1999, Mr. Lump contacted Boone, who could not provide an explanation for the delay at that time. Mr. Lump called Boone approximately one week later to once again inquire about the delay, and again, Boone did not provide an explanation for the delay. At the end of December 1999, Mr. Lump called Boone a third time, and Boone relayed that he had talked to Modern but had no more details. Boone did not reveal to Mr. Lump that Modern's factory would be closed for two weeks during the holiday season although he knew this to be true.
At this point, Mr. Lump requested that Boone provide him with a contact number for Modern. Thereafter, Mr. Lump contacted Ron Keplinger, a representative of Modern, on several occasions to discuss the delivery delay, as well as an expected delivery date. However, Keplinger did not provide an explanation. Mr. Lump then spoke with the manager, Mike Schweigert, on at least two occasions. Sometime during his conversations with representatives of Modern and Best, Mr. Lump did discover that Modern had not promptly processed the order upon receiving it from Best.
The windows did not arrive at the construction site until the middle of January 2000, and two of the ordered windows were missing. Mr. Lump once again contacted Keplinger, this time to investigate where the other two windows were. Mr. Lump maintains that Keplinger told him that these two windows were placed on a separate order for some unknown reason but that they would arrive within the week. When they did not arrive within the week, Mr. Lump contacted Keplinger and was given another delivery date. He then contacted Schweigert and Keplinger. Throughout the course of these conversations, Mr. Lump received approximately four different delivery dates for the two missing windows. At some point, Mr. Lump told Schweigert about the financial problems being caused by not having the windows and requested that Modern do something to make the situation "right" or else Modern could take the windows back. Mr. Lump contends that Schweigert told him that Modern would do whatever it took to rectify the situation. The missing windows arrived in early February of 2000. However, by this time, Mr. Lump claims that he could not perform the work inside the house that he had agreed to do because his work schedule prevented him from doing so.
Moreover, while attempting to install the windows that were delivered, Lumbatis discovered that several of the windows did not fit the rough openings. As a result, he had to adjust the size of the rough openings to accommodate the windows. Also, one of the windows that was to be mulled together by the manufacturer came in two separate pieces, and the window frame had to be changed to accommodate this style of window. A further problem with the windows was that the bedroom windows did not meet the applicable egress codes, and the window above the Jacuzzi tub was not made of tempered glass as it should have been for safety purposes. In addition, the Lumps discovered that the windows did not work properly in that someone had to go outside to shut the windows in order for them to latch. This discovery was not made until a few months after the windows were installed.
The Lumps filed suit against Best and Modern on May 12, 2001. The complaint against Best contained two counts of breach of contract, two counts of violations of the CSPA, two counts of violating express and implied warranties, and one count of fraud. The complaint against Modern contained two counts of violations of the CSPA, two counts of violating express and implied warranties, and one count of fraud. Best filed its answer to the complaint on June 14, 2000, and counterclaimed against the Lumps for failing to pay for the windows that they received. Modern filed its answer to the complaint on July 14, 2000.
On March 1, 2001, Best filed its motion for summary judgment as to all counts of the complaint against it, as well as on its counterclaim against the Lumps. On that same date, Modern filed a motion for summary judgment as to all counts of the complaint against it. On June 6, 2001, the trial court granted summary judgment in favor of Best as to the Ohio Consumer Sales Practices Act (hereinafter "CSPA") claims and as to the claim alleging fraud. Also, in its June 6, 2001, judgment entry, the trial court denied the motion for summary judgment as to the breach of contract claims, the breach of express/implied warranty claims, and as to the counterclaim. On June 8, 2001, the trial court granted summary judgment in favor of Modern as to the CSPA claims and as to the claim alleging fraud. In this same entry, the trial court denied the motion for summary judgment as to the breach of express/implied warranty claims and gave leave to the Lumps to amend their complaint to include a breach of contract cause of action against Modern.
These appeals, now consolidated, followed, and the Lumps now assert two assignments of error with the trial court's June 6, 2001, and June 8, 2001 judgments.
 In its June 8, 2001 Judgment Entry, the Logan County Common Pleas Court (the "Trial Court") erred to the prejudice of Appellants by ruling that Appellee, Modern Builders Supply, Inc. ("Modern"), is not a "supplier" as such term is defined in the Consumer Sales Practices Act as set forth in R.C. § 1325, et. seq. (the "CSPA").
 In both its June 6, 2001 Judgment Entry and its June 8, 2001 Judgment Entry, the Trial Court erred to the prejudice of Appellants by ruling that reasonable minds could come to the one conclusion that neither Modern nor Appellee, Best Door Window, Inc. ("Best"), violated the CSPA.
As the two assignments of error relate to the issue of summary judgment, this Court will address them together.[1] However, for the sake of clarity, this Court will address the claims involving Best and Modern separate from one another.
In reviewing a grant of summary judgment, appellate courts are to apply a de novo standard. Lorain Nat'l Bank v. Saratoga Apts. (1989),61 Ohio App.3d 127, 129. Thus, such a grant will be affirmed only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). In addition, "summary judgment shall not be rendered unless it appears * * * that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence construed most strongly in his favor." Id. The moving party may make his motion for summary judgment in his favor "with or without supporting affidavits[.]" Civ.R. 56(B). However, summary judgment should be granted with caution, with a court construing all evidence and deciding any doubt in favor of the nonmovant. Murphy v. Reynoldsburg (1992),65 Ohio St.3d 356, 360.
 Best Door Window, Inc.
The Lumps maintain that the trial court should not have granted summary judgment in favor of Best because (1) Best failed to perform its duties in a timely manner; (2) Best continually stalled and evaded its legal obligation to the Lumps; (3) Best displayed a pattern of inefficiency and incompetence; (4) Best breached the implied warranty of merchantability, as well as express warranties made to the Lumps; (5) Best breached its contract with the Lumps; and (6) Best failed to include in the contract all material statements, representations, and promises made prior to the execution of the contract, all of which constitute violations of the CSPA.
The CSPA "is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11." Einhorn v. Ford Motor Co. (1990), 48 Ohio St.3d 27, 29. Because this Act is remedial in nature, it is "entitled to a liberal construction." Charlie's Dodge, Inc. v. Celebrezze (1991),72 Ohio App.3d 744, 747 (citations omitted). The CSPA states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). The statute then provides a list of representations that are considered deceptive. See R.C. 1345.02(B). However, this list specifically states that it in no way seeks to limit "the scope of division (A)[.]" In addition to the statutory list, two other separate sources can determine what constitutes a violation of the CSPA: the Ohio Administrative Code and the judiciary. See R.C. 1345.09(B); Frey v. Vin Devers, Inc. (1992), 80 Ohio App.3d 1, 6. In fact, "Ohio courts have defined a variety of specific acts and practices which are unfair or deceptive."Baker v. Tri-County Harley Davidson, Inc. (Nov. 15, 1999), Butler App. No. CA98-12-250, unreported, 1999 WL 1037262, at *1.
Revised Code section 1345.03 is very similar to R.C. 1345.02, except that it provides that suppliers are not to "commit an unconscionable act or practice in connection with a consumer transaction." This section then list factors to consider in determining whether an act or practice is unconscionable. See R.C. 1345.03(B). Additionally,
 a consumer has a cause of action under the CSPA and is entitled to relief: "[w]here the violation was an act or practice * * * determined by a court of this state to violate section 1345.02 or 1345.03 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code[.]"
 Miner v. Jayco, Inc. (Aug. 27, 1999), Fulton App. No. F-99-001, unreported, 1999
WL 651945, at *6 (quoting R.C. 1345.09(B)).
Although the CSPA uses the words "unfair" and "deceptive", "a consumer is not required to demonstrate that a supplier intended to be unfair or deceptive." Frey, 80 Ohio App.3d at 6 (citations omitted); see alsoMeade v. Nelson Auto Group (March 31, 1997), Union App. No. 14-96-45, unreported, 1997 WL 208685. "It is how the consumer views the act or statement which determines whether it is unfair or deceptive." Frey,80 Ohio App.3d at 6; see also Meade, supra. Consequently, "[i]f the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, the act or statement is deceptive." Frey,80 Ohio App.3d at 6 (citation omitted); see also Meade, supra. "[T]he basic test is one of fairness as the act need not rise to the level of fraud, negligence or breach of contract." Thompson v. Jim Dixon LincolnMercury, Inc. (April 27, 1983), Butler App. No. 82-11-0109, unreported, 1983 WL 4353.
The first enumerated violation of the CSPA by Best is its failure to perform in a timely manner. We recognize that not every instance of untimeliness or inefficiency will constitute a violation of the CSPA. However, it is our conclusion that the circumstances alleged in this case could reasonably be found to constitute such violations. Thus, at least two Ohio appellate courts have determined that untimeliness can constitute "a deceptive act or unconscionable practice, violating R.C.1345.02 or 1345.03[.]" Crye v. Smolak (1996), 110 Ohio App.3d 504, 510;Baker, supra. The Lumps maintain that Boone's statement that the delay in delivery of the windows was unusual and unreasonable, coupled with the given delivery date of December 13, 1999, and an actual delivery date of early February 2000, is sufficient to demonstrate that reasonable minds could differ as to whether the windows were delivered in a timely manner. Best and the Lumps dispute whether December 13, 1999, was a given delivery date. However, the facts are to be construed in favor of the non-moving party, the Lumps. The facts as alleged by the Lumps are that Best, through Boone, knew of the importance of the December 13, 1999 delivery date to the Lumps, that Boone told Mr. Lump that the windows would be delivered by this date, that Boone failed to obtain or relay any useful information about the delay upon three separate inquiries by Mr. Lump after the expiration of the December 13, 1999 delivery date, and that Boone failed to disclose to Mr. Lump that Modern was on holiday shut down for two weeks during this period. Therefore, a reasonable person could find that December 13, 1999, was the date by which the windows were to be delivered, that they were not delivered until February, and that this nearly two months delay was untimely under circumstances that could constitute a deceptive or unconscionable practice under the CSPA. Thus, a genuine issue of material fact exists, preventing a grant of summary judgment for such a possible CSPA violation.
The next contention made by the Lumps is that the continuous stalling and evading of Best's legal obligations to them constitute a CSPA violation. Ohio courts have determined that "[a] supplier in connection with a consumer transaction who consistently maintains a pattern of inefficiency, incompetency, or continually stalls and evades his legal obligations to consumers, commits an unconscionable act and practice in violation of the Ohio Consumer Sales Practices Act[.]" Brown v. Lyons
(1974), 43 Ohio Misc. 14, paragraph two of the syllabus; see also Miner,supra at *7-8.
Once again, Mr. Lump contacted Best's representative, Boone, at least three times regarding the delay with the windows. Mr. Lump testified during his deposition that each time he contacted Boone that Boone told him that he did not have any information as to why there was a delay. However, Boone testified that he learned that the order had not been placed by Modern and that the factory would be closed for two weeks during the holiday season. However, the Lumps maintain that Boone never told them this information but instead denied having any knowledge of what was causing the delay, which led Mr. Lump to request a contact number at Modern.
Based upon this information, reasonable minds could determine that this was a false and deceptive act on the part of Best, as well as a way to stall and evade Best's legal obligations. Therefore, summary judgment should not have been granted for this possible CSPA violation.
Next, the Lumps claim that Best violated the CSPA by displaying a pattern of inefficiency and incompetence. As previously stated, maintaining a pattern of inefficiency and incompetency constitutes a violation of the CSPA. Brown, supra; see also Daniels v. True (1988),47 Ohio Misc.2d 8, 10. The Lumps maintain that such a pattern by Best is demonstrated through its failure to deliver the windows within a reasonable amount of time, the failure to provide the correct rough opening sizes to Lumbatis, the failure to provide windows that satisfied the applicable egress code, the failure to supply a window to go above the Jacuzzi that contained tempered glass for safety purposes, the failure to inform them that the largest window would not come mulled together, the failure to inform them that one of the transoms that they ordered was not available for the type of door that they ordered, and the failure to supply windows that could be closed properly. As further evidence of such a pattern, the Lumps contend that the failure to inform them as to the reasons for the delay also demonstrated incompetence and inefficiency.
Best disputes nearly all the facts surrounding these allegations. Accordingly, this Court finds that genuine issues of material fact exist as to whether Best engaged in a continuous pattern of inefficiency and incompetence so as to constitute a violation of the CSPA. Thus, summary judgment as to the issue is improper.
The Lumps further maintain that Best violated the CSPA by breaching express and implied warranties. In Brown, the court found that the "[f]ailure by a supplier in connection with a consumer transaction to honor implied warranties of merchantability constitutes a deceptive act and practice in violation of the Ohio Consumer Sales Practices Act, R.C.1345.02(A). This failure to honor implied warranties also constitutes a violation of R.C. 1345.02(B)(10)." Brown, 43 Ohio Misc. at 19. Likewise, a "[f]ailure to honor an express warranty has been held to constitute a violation of R.C. 1345.02." Layne v. McGowen (May 24, 1995), Mont. App. No, 14676, unreported, 1995 WL 316233, at *5 (citingBrown, supra). The trial court found that genuine issues of material fact existed as to the claims involving any express and implied warranties, and we agree. Thus, genuine issues of material fact exist as to whether the CSPA was violated in regards to these claims.
The next contention made by the Lumps is that Best violated the CSPA byknowingly breaching its contract with them. In support of their argument, the Lumps rely on Zimmerman v. U.S. Diamond Gold Jewelers,Inc. (March 8, 1995), Mont. App. No. 14680, unreported, 1995 WL 100820, wherein the trial court found that a knowing breach of contract constituted a violation of the CSPA. In the case sub judice, the trial court found that genuine issues of material fact existed as to the breach of contract claims, and we agree. While we acknowledge that not every breach of contract will constitute a CSPA violation, under these circumstances genuine issues of material fact exist as to whether the CSPA was violated in regards to the breach of contract claims.
Lastly, the Lumps maintain that Best violated the CSPA by failing to include in the written contract all material statements, representations, or promises made by Best prior to the execution of the contract. At least one court has found that "[a] supplier's practice of failing to include in any written contract all material statements, representations, or promises, oral or written, made prior to the written contract by the supplier, is an unfair and deceptive act or practice in violation of R.C. 1345.02." Lardakis v. Martin (July 29, 1994), Summit Cty. C. Pl. No. CV 94-01-0234, unreported, 1994 WL 912251, at *2.
In the present case, the trial court found that there was evidence that the order form was not a complete statement of the parties' agreement and implied a delivery date of December 13, 1999, when construing the facts most favorably to the Lumps. The Lumps maintain that this delivery date was a material part of the agreement that was omitted by Best, as was the change of one type of door to another, which was also omitted from the form. Best maintains that the form contained all material elements. Thus, genuine issues of material fact exist as to these alleged missing terms and this potential violation of the CSPA.
 Modern Builders Supply, Inc.
The Lumps maintain that the trial court should not have granted summary judgment in favor of Modern because Modern is a supplier as defined by the CSPA and (1) Modern failed to perform its duties in a timely manner; (2) Modern continually stalled and evaded its legal obligation to the Lumps; (3) Modern displayed a pattern of inefficiency and incompetence; (4) Modern breached the implied warranty of merchantability; and (5) Modern breached its contract with the Lumps.
The Lumps' first assignment of error states that the trial court was incorrect in determining that Modern was not a "supplier" as defined in the CSPA. Modern contends that it was not a supplier because it did not encourage the Lumps to buy the windows by advertising or other incentives. Rather, it sold to Best, who in turn sold the windows to the Lumps. In addition, Modern maintains that the windows were not for personal, family, or household purposes. Our interpretation of the June 8, 2001 judgment of the trial court is that the trial court found that Modern was not a part of a consumer transaction, as defined by the CSPA, because it was not involved in a sale to an individual because it actually sold its product to Best.
The definition of "consumer transaction" provides in pertinent part that it "means a sale, lease, assignment, award by chance, or other transfer of an item of goods . . . to an individual for purposes that are primarily personal, family, or household[.]" R.C. 1345.01(A). However, this statute must be read in conjunction with R.C. 1345.02 and R.C.1345.03, which provide that a supplier is prohibited from doing certain things "in connection with a consumer transaction." R.C. 1345.02(A), 1345.03(A) (emphasis added.) The definition of supplier "includes those who engage in the business of effecting consumer transactions, whether or not they deal directly with the consumer." Garner v. Borcherding Buick,Inc. (1992), 84 Ohio App.3d 61, 64 (citing R.C. 1345.01(C)). "Furthermore, a supplier's representation may violate the Ohio Consumer Sales Practices Act whether they occur `before, during, or after the transaction.'" Garner, 84 Ohio App.3d at 64 (quoting R.C. 1345.02(A)). Thus, "the defendant must have some connection to the consumer transaction in question in order to be liable as a supplier for deceptive practices[.]" Garner, 84 Ohio App.3d at 64.
Contrary to Modern's assertion that the windows were not to be used for personal, family, or household use, the record establishes, unequivocally, that the windows were being installed in the Lump's personal residence. Although the windows become part of the realty, they were custom made for household use. In addition, when construing the facts most favorably to the Lumps, Modern was connected to the consumer transaction between the Lumps and Best once it began discussions with Mr. Lump as to what was causing the delay, by giving various delivery dates, and in telling Mr. Lump that it would take care of him. Thus, the relationship between Modern and the Lumps fits squarely within the boundaries of the CSPA.
As previously discussed, a violation of the CSPA can occur by one's failure to honor an implied warranty of merchantability. The trial court found that genuine issues of material fact exist as to whether Modern failed to honor the implied warranty of merchantability, and we agree. Thus, summary judgment is not proper as to a possible CSPA violation arising from an implied warranty claim.
Turning to the other claims, we note that the trial court allowed the Lumps to amend their complaint to allege breach of contract against Modern. As noted earlier, a CSPA violation can arise from a knowing breach of contract. Because there is a pending breach of contract claim against Modern, summary judgment as to CSPA violations based on this claim was improper.
Likewise, untimeliness can be a deceptive or unconscionable act violative of the CSPA, as previously addressed herein. The Lumps presented evidence that Modern misplaced their order. Also, Mr. Lump had to make numerous phone calls to inquire about his windows to rectify the situation and was given at least four different delivery dates before the windows arrived. In addition, despite the calls, not all the windows arrived at one time and over two months elapsed before all of the windows arrived. Reasonable minds could reach different conclusions as to whether this was untimely, and thus, a violation of the CSPA. Therefore, summary judgment is improper as to this possible CSPA violation.
The Lumps also maintain that the CSPA was violated by Modern by continually stalling and evading its legal obligations. They contend that Modern did not tell Mr. Lump the reasons for the delay, despite his repeated phone calls, and that over two months elapsed before all of the windows were delivered. Modern maintains that it made every effort to quickly remedy the problem for the Lumps.
As discussed previously herein, a supplier's continuous stalling and evading of its legal obligations violates the CSPA. Based on the foregoing record, reasonable minds could reach differing conclusion as to whether Modern's action constituted a false and deceptive act on the part of Modern, as well as a way for Modern to stall and evade its legal obligations. Therefore, summary judgment should not have been granted for this possible CSPA violation.
Finally, the Lumps assert that Modern engaged in a pattern of inefficiency and incompetency. Such a pattern violates the CSPA, as noted earlier. For the same reasons, genuine issues of material fact exist as to whether Modern's actions constitute a pattern of inefficiency and incompetency. Thus, reasonable minds could differ as to whether this constitutes a CSPA violation.
For all of the foregoing reasons, the appellants' assignments of error are sustained, the partial summary judgment of the Common Pleas Court of Logan County is reversed, and the matters are remanded to that court for further proceedings according to law.
Judgments reversed and cause remanded.
BRYANT, J., concurs.
WALTERS, J., concurs separately.
[1] The summary judgment and dismissal of the fraud claim has not been appealed.