[Cite as *Greenwood v. Quality Motor Cars by Butch Miller*, 2016-Ohio-8172.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KEITH GREENWOOD | ) | CASE NO. 15 BE 0003 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| QUALITY MOTOR CARS BY | ) | |
| BUTCH MILLER | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the County Court,
Eastern Division of Belmont County,
Ohio
Case No. 12 SC I 00057

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiff-Appellee:     Keith Greenwood, *Pro se*
44651 Springbrook Drive
St. Clairsville, Ohio  43950

For Defendant-Appellant:     Atty. Russell Gerney
124 Paxton Avenue
Wheeling, WV  26003

JUDGES:

Hon. Cheryl L. Waite
Hon. Mary DeGenaro
Hon. Carol Ann Robb

Dated:  December 15, 2016

WAITE, J.

**{¶1}** In this action involving a vehicle warranty, Appellant Quality Motor Cars by Butch Miller appeals the Belmont County Small Claims Court's decision in favor of Appellee Keith Greenwood. Appellant argues that Appellee's warranty enforcement claim should have been filed against the warranty provider, not the dealership. Appellant additionally argues that the trial court's finding is contrary to the manifest weight of the evidence. For the reasons provided, Appellant's arguments are without merit and the trial court's decision is affirmed.

Factual and Procedural History

**{¶2}** On December 30, 2011, Appellant sold a 2002 Chevrolet S-10 truck to Appellee. Initially, Appellant offered the truck to Appellee for $7,500 and Appellee countered at $5,500. Appellant rejected the counter offer but offered to include a "deluxe extended warranty" which would supposedly provide warranty coverage on the truck for 3,000 miles. Appellee accepted the offer and signed a disclosure statement which stated that the odometer read 157,382 miles at the time of sale.

**{¶3}** Appellee drove the truck off the lot and began to experience problems with it eight miles into his drive home. As a result, Appellee had the truck towed. The next morning, Appellee called Appellant and informed him that he experienced problems with the truck. Appellant asked Appellee to bring it in right away; however, Appellee called a week later and told Appellant that the issue was resolved. Appellee called again in February of 2012 and notified Appellant that the truck had once more broken down.

**{¶4}** Appellee brought the truck to Appellant who had an outside repair facility examine the vehicle. An affidavit filed by the facility stated that no problems could be found and Appellee drove the truck off the lot. Shortly thereafter, Appellee took the truck to Whiteside Chevrolet who informed Appellee that the engine and transmission needed to be replaced. Whiteside told Appellee that the repairs would cost around $6,000 and that his warranty would not cover the vast majority of these repairs.

**{¶5}** On March 22, 2012, Appellee filed a small claims complaint *pro se.* Appellee alleged that he had discovered that the truck was not eligible for the warranty sold him by Appellant. Appellee complained that Appellant failed to honor the warranty or repair the truck. Appellee sought damages in the amount of $2,900, which amounted to half of the cost of repairs. The trial court held a hearing where both parties presented testimony. At the hearing, Appellee claimed he had received emails from Appellant admitting knowledge of the extent of damage. Copies of these alleged emails were not admitted into evidence and are not part of the record. On December 8, 2014, the trial court entered judgment in favor of Appellee and awarded him $2,900, plus interest.

**{¶6}** Appellant timely appealed. While he lists four assignments of error in his appellate brief, Appellant only provides argument under two of these assignments. Only those assignments with a discussion will be analyzed.

<u>First Assignment of Error</u>

The Plaintiff failed to bring a cause of action against Defendant upon which relief could be granted.

**{¶7}** Appellant argues that Appellee wrongfully brought a warranty enforcement claim against the seller of an automobile rather than against the warranty provider. While Appellant phrases his arguments in a manner that seems to raise Civ.R. 12(B)(6), it appears that Appellant is actually addressing his argument based on the premise that in suing him, Appellee has sued an improper party.

**{¶8}** In response, Appellee argues that Appellant offered and accepted payment for the warranty despite the fact that he knew the truck he was selling Appellee was ineligible for coverage under this warranty. It is apparent Appellee's claim is based on the conduct of Appellant and not due to any conduct on the part of the company providing the warranty. Consequently, Appellee contends that Appellant is the proper party.

**{¶9}** As Appellee points out, the issue in this case is not whether the warranty provider improperly refused to cover the cost of repairs. The issue here is whether Appellant sold Appellee a warranty that the truck was ineligible to receive. As such, Appellant was the proper party. Appellant's first assignment of error is without merit and is overruled.

<u>Second Assignment of Error</u>

It is error for a trial court, where the court is also the finder of fact, to grant judgment to a party where the record clearly shows that that

party's assertions are contradicted by the manifest weight of the evidence.

**{¶10}** Appellant contends that Appellee's claims do not comport with the facts and that Appellee's testimony was not credible. Appellant argues that it would have been impossible for Appellee to drive the truck 380 miles if it had the kind of damage Appellee claims. Appellant also asserts that Appellee's lack of credibility is demonstrated by his statement that the odometer reading listed on the signed disclosure form was incorrect.

**{¶11}** Appellee does not directly respond to Appellant's arguments except to dispute the odometer reading. Instead, Appellee focuses on his claim that he paid for a warranty that the vehicle he purchased was ineligible to receive. Appellee claims that the warranty provider informed him that a high-mileage vehicle like this truck would not qualify for the deluxe warranty sold. However, there is no evidence within the record to support this claim and it is mentioned for the first time in Appellee's brief.

**{¶12}** A small claims court proceeding is reviewed for an abuse of discretion. *Sammartino v. Eiselstein*, 7th Dist. No. 08 MA 211, 2009-Ohio-2641, ¶ 8, citing *Dinucci v. Lis*, 8th Dist. No. 86223, 2005-Ohio-6730. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶13}** The small claims court is designed to provide a speedy, low cost alternative to parties with noncomplex disputes. *Sammartino, supra,* at ¶ 10. Small claims court proceedings are subject to the Ohio Rules of Civil Procedure, except as otherwise provided by statute or court rule. *Id.,* citing R.C. 1925.15. However, the rules of procedure are more relaxed in small claims court. *Stull v. Budget Interior,* 7th Dist. No. 02 BA 17, 2002-Ohio-5230, ¶ 11, citing *Feinstein v. Habitat Wallpaper & Blinds*, 8th Dist. No. 67419, 1994 WL 716345 (Dec. 22, 1994).

**{¶14}** Pursuant to Article IV, Section 3(B)(3) of the Ohio Constitution, appellate courts are authorized to assess the weight of the evidence. *State v. Draper*, 7th Dist. No. 07 JE 45, 2009-Ohio-1023, ¶ 25. When reviewing a manifest weight of the evidence claim, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at ¶ 26, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶15}** A manifest weight of the evidence review looks to whether the evidence is persuasive or believable. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). "Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis deleted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 12, citing *Thompkins, supra*, at 387, 678 N.E.2d 541.

{¶16} Preliminarily, it is unclear which cause of action Appellee relied on in bringing his claim. Similar causes have been filed as breach of contract claims or violations of R.C. 1345.02. We will address both legal theories. To recover on a breach of contract claim, the plaintiff must prove "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damage or loss to the plaintiff." *Bowman v. Canfield*, 7th Dist. No. 13 MA 144, 2015-Ohio-1323, ¶ 16, citing *Ballard v. Nationwide Ins. Co.*, 7th Dist. No. 11 MA 122, 2013-Ohio-2316, ¶ 14. This record reveals that the parties had a valid contract, there was performance on Appellee's part, and Appellee sustained damages. The issue is whether there was a breach by Appellant.

{¶17} At the hearing, the parties presented both testimony and physical evidence. As to the warranty, only Appellee provided testimony. Appellee testified that Appellant Miller told him at the time of the sale that he "would put a full three thousand mile, three-month bumper to bumper warranty" on the truck. (Hearing Tr., p. 6.) Appellee explained that the cost of the warranty was built into the sale price and Appellee produced a copy of the sales contract. The contract acknowledged the warranty and specified that the truck was covered by a 3,000 mile/three-month deluxe warranty. Neither party presented any evidence as to how much of the sale price was attributable solely to the warranty nor whether any of the sale price was paid to the warranty provider. Based on the record, however, it is clear that Appellant sold Appellee a deluxe warranty. The question becomes whether Appellee received the deluxe warranty that he paid for and, if not, whether this amounted to a breach.

**{¶18}** In addition to the sales contract, the physical evidence included a copy of the warranty and two repair invoices, one from Whiteside and one from A1. The repair invoice from Whiteside stated: "REPAIRS NOT COVERED BY CUSTOMERS EXTENDED WARRANTY CUSTOMER DECLINED REPAIRS." (3/22/12 Whiteside Repair Invoice.) The repair invoice from A1 stated: "CUSTOMER HAS EXTENDED WARRANTY THEY PAID $450 ON BILL." (3/22/12 A1 Repair Invoice.) According to these invoices, the warranty did not cover the complete cost of the repairs.

**{¶19}** While Appellee claims in his brief that the warranty provider told him that any vehicle with more than 125,000 miles was ineligible for coverage under the deluxe warranty, this information is nowhere on the record. However, there is evidence that suggests that Appellee did not receive the benefits of a deluxe warranty, which was purchased by him as part of an incentive to purchase the vehicle. For instance, the warranty in evidence states that engine block repair/replacement is covered by the deluxe warranty if mechanical failure is caused by a part specified within the warranty. Among the specific parts is a wrist pin and rod bearing. The repair invoice from A1, the shop which completed the repair, stated that the engine block issue was caused by a faulty wrist pin and rod bearing. As mechanical failure was caused by a part that should have been covered pursuant to the warranty, repair or replacement of the engine block should have been covered in full by Appellee's deluxe warranty.

**{¶20}** The A1 invoice indicates that $450 was paid by the warranty provider. The cost for parts to repair the engine block was $1,250. Additionally, the labor

amounted to $2,025. Although there is some question as to whether labor is included within the deluxe warranty, it is apparent that the full costs of at least the parts for repair should have been covered by this warranty. That they were not provides evidence that Appellee did not receive the benefits of the deluxe warranty he was sold.

**{¶21}** We note that there are some parts and labor included within A1's service invoice that may not be covered by the deluxe warranty. This issue was not raised by either party. Regardless, the record contains competent and credible evidence to demonstrate that Appellant breached the contract of sale with Appellee which included purchase of a deluxe warranty. Appellee got the benefit of some sort of warranty, just not the warranty for which he was assured he had paid.

**{¶22}** This action could also have been brought pursuant to R.C. 1345.02. According to R.C. 1345.02(A), "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(B)(10) provides that: "[w]ithout limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following * * * [t]hat a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

**{¶23}** Based on this record it is plain that Appellant represented to Appellee the truck was covered by a deluxe warranty. As previously discussed, there is

evidence that this representation was false. The issue, here, is whether this representation was unfair or deceptive. We have previously acknowledged that a consumer is not required to prove a supplier's intent to deceive. *Cartwright v. Beverly Hills Floors,* 7th Dist. No. 11 MA 109, 2013-Ohio-2266, ¶ 15, citing *Wasserman v. Home Corp.,* 8th Dist. No. 90915, 2008-Ohio-5477, ¶ 12.

**{¶24}** Instead, a consumer may show deception by presenting evidence that the supplier's actions or words were likely to induce the consumer to hold a belief that is not in accord with the facts. *Cartwright* at ¶ 15, citing *Frey v. Vin Devers, Inc.,* 80 Ohio App.3d 1, 6, 608 N.E.2d 796 (6th Dist.1992). The focus is on how the consumer views the supplier's actions or words. *Lump v. Best Door and Window, Inc.,* 3d Dist. Nos. 8-01-09, 8-01-10, 2002 WL 462863, *4 (Mar. 27, 2002), citing *Frey, supra,* at *6.

**{¶25}** In *Frey,* a car dealership miscalculated the payout amount as part of a trade-in contract. *Id.* at *6-7. The consumers refused to pay the additional amount and eventually filed an R.C. 1345.02 claim against the dealership. On appeal, the Sixth District found that the consumer viewed the price increase as an attempt to raise the price and were not informed about the increase until after the agreement became final. Consequently, the Court reversed the trial court and held that the dealership's actions were unfair and deceptive.

**{¶26}** Here, Appellee presented evidence demonstrating that he believed that the truck was covered by the deluxe warranty. Among the evidence is the sales contract which specifically stated that the truck was covered by this deluxe warranty.

Additionally, Appellee presented evidence that he was unaware that the truck was not eligible to receive the warranty until after the purchase. According to *Frey,* this is sufficient to show deception. Thus, in addition to proving a breach of contract, we find that Appellee presented evidence to find that a R.C. 1345.02 violation occurred.

**{¶27}** As to Appellee's credibility, whether the truck's odometer reading was 157,382 miles or 157,353 miles is irrelevant. The record reflects Appellee had driven the vehicle less than 3,000 miles. The warranty he was sold should have remained valid. And while Appellant argues that Appellee could not have driven the truck for 380 miles if the truck was as damaged as he claimed, the repair invoices support Appellee's claims regarding the extent of the truck's damage.

**{¶28}** Thus, regardless under which cause of action Appellee filed his claims, the decision of the small claims court is not against the manifest weight of the evidence. Appellant's second assignment of error is also without merit and is overruled.

Conclusion

**{¶29}** Appellant argues that Appellee failed to file the action against the proper party, the warranty company. This action was not filed, however, to enforce a warranty. Rather, Appellee claims that Appellant sold a warranty that Appellee did not receive. As such, the action was brought against the proper party in this matter. Appellant further contends that the small claims court's finding in favor of Appellee is against the manifest weight of the evidence. Because the record provides competent

and credible evidence that supports the court's decision, the trial court's decision is affirmed.

DeGenaro, J., concurs.

Robb, J., concurs.

APPROVED:

_____
CHERYL L. WAITE, JUDGE