OPINION
{¶ 1} Terry and Shay Molique appeal from the trial court's judgment entry largely rejecting their breach-of-contract and contribution claims against appellees Danielle and Rae Allen for unpaid rent.
 {¶ 2} The Moliques advance three assignments of error on appeal. First, they contend the trial court erred by ruling in favor of the Allens on the basis of waived affirmative defenses such as constructive eviction and anticipatory breach. Second, the Moliques assert that the trial court erred by applying the affirmative defense of constructive eviction when this case involved a dispute between co-tenants rather than a tenant and a landlord. Third, the Moliques argue that the trial court erred by applying the affirmative defense of anticipatory breach.
 {¶ 3} The record reflects that Shay Molique and Danielle Allen entered into a written agreement in June, 2001, to lease an apartment from the Village Green Management Company. The one-year lease lists Shay and Danielle as the tenants and Village Green as the landlord. At the time of the lease, Shay and Danielle were both eighteen years old. Shay's father, Terry Molique, and Danielle's mother, Rae Allen, co-signed the lease. In addition to their lease with Village Green, the Moliques and the Allens stipulated that they entered into an oral agreement to split equally the monthly $555 rent.
 {¶ 4} Shay and Danielle moved into the apartment and resided together through July, 2001. On August 1, 2001, Danielle vacated the apartment without notice to Shay, purportedly because Shay was having too many parties and inviting too many overnight guests. Soon after Danielle left, Shay had the locks changed because she "didn't want keys being around." Within a few days of Danielle's departure, Terry Molique called Rae Allen and inquired about Danielle's share of the rent for August and beyond. When Rae Allen refused to pay, the Moliques paid one-hundred percent of the monthly rent for the remainder of the lease term. On April, 2, 2002, the Moliques commenced the present action for breach of contract and contribution to recover one-half of the rent they paid.
 {¶ 5} The matter proceeded to a November 5, 2002, hearing before a magistrate. On December 31, 2002, the magistrate filed a short decision finding the Allens liable for one-half of the rent only for August, 2001. In support of his decision, the magistrate reasoned as follows:
 {¶ 6} "Defendants raised various arguments in an attempt to persuade the Court that the Defendants had no liability for the remainder of the lease term despite the oral agreement of the parties to the contrary. While the facts introduced during the trial established that Ms. Molique was housing her boyfriend in the apartment and that she hosted a couple of parties at the apartment, the Court is not persuaded that Danielle Allen vacated the subject premises as a result of Ms. Molique's boyfriend cohabiting or as a result of the two parties hosted by Molique at the premises. The Defendants' rationale for vacating the premises is of little importance to the Court. What is important to the Court is the testimony of Shay Molique that in August of 2001 after Danielle Allen vacated the premises, she caused the locks on the premises to be changed, thus constructively evicting Danielle Allen from the premises. In so doing, Molique has effectively terminated Danielle Allen's tenancy and anticipatorily breached the oral contract between the parties which would have obligated Allen to pay Two Hundred Seventy Seven dollars and Fifty cents ($277.50) monthly for the remaining lease term. By breaching the oral agreement, Allen is only liable for rent for the month of August 2001 in the amount of Two Hundred Seventy Seven dollars and Fifty cents ($277.50)."
 {¶ 7} The Moliques subsequently filed objections to the magistrate's decision. In particular, they argued: (1) that the magistrate erred by sua sponte inserting the affirmative defenses of constructive eviction and anticipatory breach into the case when the Allens had not raised those defenses; (2) that constructive eviction only applies to landlord-tenant disputes and not disputes between co-tenants; (3) that a party cannot commit an anticipatory breach after the other party has breached the contract; and (4) that the Allens had no viable defense to the breach-of-contract and contribution claims.
 {¶ 8} On April 9, 2003, the trial court summarily overruled the Moliques' objections without explanation and entered final judgment in their favor for only $277.50 (the amount of the Allens' rent obligation for August, 2001). This timely appeal followed.
 {¶ 9} In their first assignment of error, the Moliques contend the trial court erred by ruling in favor of the Allens on the basis of waived affirmative defenses. In particular, they claim the trial court should not have raised the issues of constructive eviction and anticipatory breach because the Allens never asserted those defenses.[1]
 {¶ 10} Upon review, we find the Moliques' first assignment of error to be persuasive. As noted above, the complaint in this case alleged that the Allens had breached the parties' oral rent-sharing agreement by failing to pay one-half of the rent due under the lease. In their answer, the Allens asserted, as a defense, that the oral rent-sharing agreement included a provision that only Shay and Danielle would reside in the apartment, and that Shay had breached this provision by allowing a male friend to reside there, thereby relieving the Allens of their obligation to pay one-half of the rent. As an additional defense, the Allens alleged that after Danielle's departure, Shay had agreed to be responsible for the entire rent obligation. The Allens also pled defenses such as failure to state a claim, failure to join necessary parties, and failure to demonstrate damages as a direct and proximate result of their conduct.
 {¶ 11} At the subsequent hearing before the magistrate, the Allens presented no evidence to support their claim that the oral rent-sharing agreement included a prohibition against anyone other than Shay and Danielle residing in the apartment. The Allens also presented no evidence that Shay agreed to be responsible for the entire rent payment after Danielle vacated the apartment. Nor did they present any evidence to support the other defenses in their answer. Instead, the hearing transcript suggests that the Allens defended on the basis that Shay held too many beer parties and had too many overnight guests, thereby interfering with Danielle's enjoyment of the premises and relieving her of her obligation to pay one-half of the rent.[2] The Allens also presented evidence to suggest that Shay failed to mitigate her damages after Danielle's departure by not seeking a new tenant to share the rental expense. In a post-hearing brief, however, the Allens' counsel focused on an entirely different issue. In particular, defense counsel seized upon Shay's hearing testimony that she had the apartment door locks changed after Danielle's departure. Defense counsel argued that this act, particularly when coupled with Shay's continued co-habitation with one or more male friends, terminated the Allens' obligation to pay one-half of the rent.
 {¶ 12} In his decision, the magistrate largely adopted this argument, finding that Shay's act of changing the locks constituted both a "constructive eviction" of Danielle and an "anticipatory breach" of the parties' oral rent-sharing agreement. A review of the record, however, reveals that the Allens never raised a defense based on Shay's decision to have the apartment door locks changed after Danielle's departure. The answer in this case is devoid of any such defense. Furthermore, while Civ.R. 15(B) allows issues not raised by the pleadings to be tried by the express or implied consent of the parties, the record fails to persuade us that the Moliques impliedly consented to litigate the issue.
 {¶ 13} Brief testimony about changing the apartment door locks appears to have been introduced inadvertently during defense counsel's cross examination of Shay Molique. When discussing Danielle's departure, defense counsel asked whether she had left her door key behind. Shay answered, "No, she didn't." Shay then added, gratuitously, "I had the locks changed." (Hearing transcript at 46). Defense counsel asked one follow-up question to determine when the locks were changed. Shay responded, "I don't remember. It was soon after she was gone because I didn't want keys being around." (Id. at 47). The changed locks were not mentioned again.
 {¶ 14} In State ex rel. Evans v. Bainbridge Twp. Trustees
(1983), 5 Ohio St.3d 41, the Ohio Supreme Court held that under Civ.R. 15(B) "implied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection. Rather, it must appear that the parties understood the evidence was aimed at the unpleaded issue." Id. at 46. In addition, an issue may not be tried by implied consent where it results in substantial prejudice to a party. Id. at 45. "Various factors to be considered in determining whether the parties impliedly consented to litigate an issue include: whether they recognized that an unpleaded issue entered the case; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be retried on a different theory; and whether the witnesses were subjected to extensive cross examination on the issue." Id. at 45-46.
 {¶ 15} In the present case, the foregoing considerations persuade us that the Moliques did not try any issue involving the changed locks by implied consent. First, the parties do not appear to have recognized during the hearing that Shay's testimony about the changed locks raised an unpleaded issue. Indeed, defense counsel gave no indication, until simultaneous post-hearing briefing, that he planned to use Shay's changing of the locks to avoid the Allens' liability for unpaid rent. Likewise, the plaintiffs' counsel does not seem to have found any significance in the testimony about the locks. He did not inquire into the subject during the hearing, and he did not address the issue in his post-hearing brief.
 {¶ 16} Second, we believe that the plaintiffs' counsel may have offered additional evidence if he had recognized that changing the locks supported a potential affirmative defense. Although the trial court characterized the issue as one of "constructive eviction" or "anticipatory breach," Shay's decision to have the locks changed more accurately raises a possible "ouster" defense.[3] At common law, one co-tenant "ousts" another by committing some hostile act that demonstrates adverse possession and excludes the ousted co-tenant from the premises.Cohen v. Cohen (1952), 157 Ohio St. 503, 507. In Morga v.Friedlander (1984), 680 P.2d 1267, 140 Ariz. 206, for example, an Arizona appellate court found ouster applicable under facts somewhat similar to those here. In that case, the parties were attorneys who rented office space as co-tenants. As in the present case, the parties also orally agreed to share the rent. One of the attorneys subsequently vacated the office and quit making the rent payments. In order to avoid defaulting on the lease, the remaining tenant paid the entire monthly rent and brought an action against the departed tenant for breach of contract and contribution. Upon review, the court of appeals concluded that the plaintiff had ousted the defendant by changing the office door locks after the defendant's departure and taking other actions to deprive the defendant of his right to common and equal possession of the property, thereby relieving the defendant of his rent obligation.
 {¶ 17} In the present case, the evidence surrounding the changing of the apartment door locks is too scant to determine, with any certainty, whether an ouster occurred. As an initial matter, changing locks alone may not be sufficient to establish an ouster. See, e.g., Morga, supra, at 1270 (citing case law for the proposition that evidence of intent to exclude a co-tenant is needed to establish ouster). Although Shay testified that she "had the locks changed," the record does not reveal who actually changed the locks, whether the landlord authorized the change, whether Shay changed the locks specifically to keep Danielle (as opposed to unknown others) out of the apartment, whether Danielle even knew that the locks had been changed, or whether Danielle could have obtained a key to the new lock if she had sought one. Absent any indication that the Allens intended to rely on the changing of the locks as a defense, the Moliques' attorney had no reason to inquire into these issues or to present evidence on them.
 {¶ 18} Third, we note that the only witness to mention the changed locks was Shay, and she was not subjected to extensive cross-examination. To the contrary, after she volunteered the fact that she had changed the locks, defense counsel asked only one follow-up question about the timing of the change. As a result, we find nothing in the hearing transcript to support an inference that the parties or the trial court believed Shay's testimony about changed locks injected a new defense into the case. Rather, the issue of the changed locks appears to have been raised inadvertently and not relied on by either party until counsel for the Allens seized on it in post-hearing briefing. Under such circumstances, the magistrate and the trial court abused their discretion by relying on Shay having the locks changed to terminate the Allens' rent obligation. Accordingly, we sustain the Moliques' first assignment of error.
 {¶ 19} In their second assignment of error, the Moliques contend the trial court erred by applying the defense of constructive eviction when this case involved a dispute between co-tenants rather than a tenant and a landlord. Similarly, in their third assignment of error, the Moliques argue that the trial court erred by applying the defense of anticipatory breach. As noted, supra, we believe the present case is more properly characterized as involving a possible defense of ouster rather than constructive eviction or anticipatory breach. Regardless of the terminology used by the trial court, however, our decision rests on the Allens' fundamental failure to raise any defense based on the changed locks. Accordingly, we overrule the Moliques' second and third assignments of error as moot.
 {¶ 20} Based on the reasoning and citation of authority set forth above, the trial court's judgment is reversed and this cause is remanded for further proceedings consistent with this opinion.
 {¶ 21} Judgment reversed and cause remanded.
Fain, P.J., and Wolff, J., concur.
[1] For their part, the Allens have filed a pro se "response," indicating only that they cannot afford to hire an attorney to represent them on appeal.
[2] The specific legal basis for this argument is unclear, particularly given the Allens' failure to present any evidence that the oral rent-sharing agreement included terms prohibiting excessive partying or restricting overnight visitors. In any event, Danielle testified that she participated in the parties and made only one passing remark about Shay's boyfriend spending too much time at the apartment. Thus, the record supports the trial court's conclusion that the beer parties and Shay's co-habitation with a boyfriend were not the cause of Danielle vacating the apartment.
[3] As the Moliques properly note, a constructive eviction occurs when "acts of interference by the landlord compel the tenant to leave[.]" Liberal Savings Loan Co. v. Frankel RealtyCo. (1940), 137 Ohio St. 489, 499. In the present case, however, Shay and Danielle were co-tenants and were not in a landlord-tenant relationship with one another. Likewise, we have some difficulty applying the doctrine of anticipatory breach to Shay's act of having the locks changed. If anyone committed an anticipatory breach of the oral rent-sharing agreement, it appears to have been Danielle Allen, who vacated the apartment and refused to pay rent before Shay changed the locks. As a result, we believe the changing of the locks is best analyzed under the doctrine of ouster, which, as explained more fully above, involves hostile actions taken by one co-tenant to exclude another co-tenant from the premises.