OPINION
{¶ 1} Richard Mannix appeals from a judgment of the Dayton Municipal Court, which granted judgment in his favor in the amount of $319.04 on his claims under the Ohio Consumer Sales Practices Act, O.R.C. 1345.01 et seq. ("OCSPA"). As discussed, infra, the trial court subsequently attempted to modify the judgment, whereby judgment was to be entered in favor of DCB Service, Inc., dba Dayton Cracked Block Service ("DCB"), in the amount of $680.96.
 {¶ 2} In its original judgment, the trial court found the facts to be as follows:
 {¶ 3} "On March 16, 2001, the parties entered into an agreement where defendant, DCB Service, Inc., would remove, rebuild, and reinstall an engine in plaintiff's Ford Bronco for $2,000. Mannix made a down payment of $1,000. The work on the Bronco was not completed until approximately three and one-half months later and the final bill came to $2,367.20. Mannix paid DCB $1,000, but refused to pay the $367.20 that exceed the estimate. [DCB later informed the court that Mannix did not pay this additional $1,000; Mannix has not contested this assertion.]
 {¶ 4} "It seems the parties' business relationship became sour when the agreement was not timely fulfilled. Often, when this happens, a plaintiff will seek enforcement of all technical aspects of the statutes and administrative rules related to vehicle repair.
 {¶ 5} "Mannix claims in his Complaint that DCB committed several violations of the Consumer Sales Practices Act (O.R.C.1345.01 et seq.) and Ohio Administrative Code Section 109:4-3-13. He is asking for $3,000, plus treble damages, reasonable attorney fees, interest, and costs. DCB filed a Counterclaim for a reasonable storage charge for each day Mannix failed and refused to pick up his vehicle."
 {¶ 6} A trial was held on February 26, 2002, during which three individuals testified — Mannix; Lundy Neely, the president and sole owner of DCB; and Charles McClure, the service manager for DCB's service department. On April 8, 2003, the court ruled that DCB had committed three violations of the OCSPA by (1) failing to provide the reasonably anticipated completion date on the estimate; (2) failing to indicate on the estimate that it would not be returning replaced parts and then refusing to return the parts; and (3) failing to repair the vehicle in a timely manner. With regard to damages, the court found that, although Mannix had testified that he had incurred vehicle rental expenses of $775 due to the untimely repair, he had failed to present proof of any actual damages. The court thus concluded that Mannix was only entitled to $200 for each violation, for a total of $600. In addition, the court found that Mannix had authorized DCB to replace the radiator, at the cost of $280.96, and that this amount should be offset against the $600 owed by DCB. Finally, the court found against DCB on its counterclaim for storage fees. Accordingly, the court entered judgment in favor of Mannix in the amount of $319.04.
 {¶ 7} On May 6, 2003, DCB filed a motion to correct and amend the judgment, indicating that Mannix had not paid $2,000; rather, he had only made the initial $1,000 deposit. DCB requested that the judgment be amended to state that Mannix owed DCB $680.96, which would take into account the additional $1,000 owed to DCB for the repairs. Prior to the trial court's ruling on this motion, Mannix filed a notice of appeal. On May 16, 2003, the trial court granted DCB's motion to amend or correct the judgment. Thus, judgment was entered in favor of DCB in the amount of $680.96 plus interest.
 {¶ 8} Mannix presents two assignments of error on appeal, which we will address together.
 {¶ 9} "1. The trial court erre[d] in only finding three violations of the ohio consumer sales practices act and only awarding the statutory minimum."
 {¶ 10} "2. The trial court erred in granting appellee any sum of money which appellee had not sought in its counterclaim."
 {¶ 11} In his assignments of error, Mannix claims that the evidence at trial established that DCB had committed eight violations of the OCSPA, not just three violations, and that he was entitled to damages in an amount more than the statutory minimum. Mannix further asserts that the trial court erred in offsetting his award by the balance that was allegedly due for repairs. Mannix argues that DCB limited its counterclaim to storage fees, and it cannot now seek to modify the judgment to obtain an award that it had not previously sought.
 I. {¶ 12} As an initial matter, we must determine whether the April 8, 2003, judgment or the May 16, 2003, judgment is properly before us. DCB's motion to correct and amend the judgment was filed on May 6, 2003, pursuant to Civ.R. 59 and 60. Construed as a motion for a new trial, DCB's motion must have been filed within fourteen days of the entry of judgment. See Civ.R. 59(B). DCB's motion was filed 28 days after the initial judgment was entered. Civ.R. 6(B) prohibits a trial court from extending the time for filing a motion for a new trial, and the trial court may not consider an untimely motion. Snow v. Brown (Sept. 26, 2000), Franklin App. No. 99AP-1234. Accordingly, the trial court could not enter the May 16, 2003, judgment based on Civ.R. 59.
 {¶ 13} Civ.R. 60(A) provides: "Clerical mistakes in judgments * * * therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders.During the pendency of an appeal, such mistakes may be socorrected before the appeal is docketed in the appellate court,and thereafter while the appeal is pending may be so correctedwith leave of the appellate court." (Emphasis ours.) We have noted that Civ.R. 60(A) applies "only to clerical mistakes which involve `blunders in execution' and not substantive
mistakes `where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because, on second thought, it has decided to exercise its discretion in a different manner.'" Elsass v.Elsass (Dec. 29, 1993), Greene App. Nos. 93-CA-5, 93-CA-16 (citations omitted).
 {¶ 14} Assuming, arguendo, that the trial court's determination that Mannix had paid $2,000 rather than $1,000 was a mere "blunder in execution," the amended judgment was rendered after Mannix had filed his notice of appeal and after the case had been docketed in this court. Neither DCB nor the trial court sought leave of this court to correct the judgment. Consequently, the May 16, 2003, judgment in favor of DCB is a nullity.Elsass, supra (finding that the corrected judgment was null and void where it was rendered after the notice of appeal was filed and the case docketed and where neither the trial court nor the appellee sought leave of the appellate court).
 {¶ 15} We therefore turn to Mannix's assignments of error, considering the trial court's April 8, 2003, judgment.
 II. {¶ 16} In his first assignment of error, Mannix claims that the trial court erred in concluding that DCB had committed only three violations of the OCSPA. We infer that Mannix is challenging the court's findings in DCB's favor, at least with regard to the alleged additional violations, as being against the manifest weight of the evidence. In reviewing a claim that the judgment is not supported by the evidence, we are guided by the holding that "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Const. Co.
(1978), 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus; see Lykinsv. Miami Valley Hosp., Montgomery App. No. 19784,2004-Ohio-2732, at ¶ 112. "Furthermore, we must presume the findings of the trier of fact are correct because the trier of fact is best able to observe the witnesses and use those observations in weighing the credibility of the testimony."Lykins, supra, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 81, 461 N.E.2d 1273.
 {¶ 17} R.C. 1345.02(A) states: "No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." The statute provides a list of representations that are considered to be deceptive, but the list does not limit the scope of R.C. 1345.02(A). R.C. 1345.02(B). R.C. 1345.03(A) prohibits suppliers from committing "an unconscionable act or practice in connection with a consumer transaction." R.C. 1345.03(B) also lists "circumstances [that] shall be taken into consideration" in determining whether an act or practice is unconscionable. Ohio Admin. Code 109:4-3-13 sets forth a number of deceptive acts or practices in connection with motor vehicle repairs or services.
 {¶ 18} Although the CSPA uses the words "unfair" and "deceptive", a consumer is not required to demonstrate that a supplier intended to be unfair or deceptive. Frey v. Vin Devers,Inc. (1992), 80 Ohio App.3d 1, 6, 608 N.E.2d 796; see, also,Meade v. Nelson Auto Group (March 31, 1997), Union App. No. 14-96-45. "It is how the consumer views the act or statement which determines whether it is unfair or deceptive." (Citations omitted.) Frey, 80 Ohio App.3d at 6, 608 N.E.2d 796. The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract. Thompson v. Jim DixonLincoln Mercury, Inc. (April 27, 1983), Butler App. No. 82-11-0109. Whether any given acts or practice may be unfair or deceptive is an issue of fact to be decided from all the relevant facts and circumstances in the particular case. Swiger v.Terminix Intern. Co. (June 28, 1995), Montgomery App. No. 14523.
 {¶ 19} Mannix asserts that the trial court erred in not finding that DCB violated the OCSPA in five additional respects: (1) by telling Mannix that his car would be repaired in 10 to 14 working days from the date of receiving the vehicle; (2) by conducting business under a fictitious name without registering the name with the Ohio Secretary of State; (3) by attempting to charge storage fees for the vehicle due to the alleged nonpayment of the repairs, even though the original agreement made no provision for such fees; (4) by attempting to assess storage fees and refusing to release Mannix's vehicle; and (5) by materially understating or misstating the estimated cost of the repair.
 {¶ 20} As noted by the parties, the recording of the trial has been misplaced; consequently, there is no available transcript of the trial. Thus, the record consists of Mannix's statement of the evidence, DCB's counterstatement of the evidence, and the trial court's response to the disputed evidence. See App.R. 9(C).
 {¶ 21} First, according to the statements of the evidence, McClure testified that he had told Mannix that it would take, on average, 10-20 days from the time work started to complete the job. McClure further stated that he did not promise to start immediately, as there was other work ahead of Mannix's vehicle. In contrast, Mannix apparently testified that McClure had told him that work would begin as soon as the Bronco was brought in. Although there are no explicit findings by the trial court regarding this issue, the trial court could have reasonably concluded that McClure did not tell Mannix that his vehicle would be repaired in 10 to 14 working days from the date of receiving the vehicle. Based on the available evidence, we cannot conclude that the trial court erred by failing to find that DCB had violated the OCSPA by making an alleged misleading statement.
 {¶ 22} Second, although Neely admitted that DCB has never registered "Dayton Cracked Block Service" as a fictitious name with the State of Ohio, we do not find that this failure constitutes a deceptive act in this instance. As stated inGanson v. Vaughn (Nov. 19, 1999), Hamilton App. No. C-980929:
 {¶ 23} "[T]he fictitious name used by Vaughn did not create a subterfuge preventing Ganson from attempting to obtain redress for alleged violations of the CSPA, and Ganson has failed to demonstrate that she was damaged or prejudiced in any way by Vaughn's failure to report the use of the fictitious name to the Secretary of State. Where the failure to report is not listed in either R.C. Chapter 1345 or Ohio Adm. Code Chapter 109:4-3 as an unfair or deceptive act, and where no other deceptive acts are alleged in connection with the use of a fictitious business name, the mere failure to register does not violate the CSPA."
 {¶ 24} Here, Mannix has not claimed that DCB's use of a fictitious name impaired his ability to seek redress or otherwise. Accordingly, the trial court did not err in failing to find a violation of the OCSPA due to DCB's failure to report its fictitious name to the Secretary of State.
 {¶ 25} Third, with regard to the alleged storage fees, the trial court made no findings as to whether DCB had unlawfully attempted to charge storage fees for Mannix's vehicle. However, it held that DCB could not bring a counterclaim for storage charges after committing a violation of the OCSPA.
 {¶ 26} According to the record, Mannix testified that on July 9, 2001, he received a message that his vehicle was ready, but that the amount due was $1,367 above the $1,000 that he had already paid. Mannix stated that he refused to pay this amount, and DCB refused to release the car. Mannix offered into evidence a letter from DCB, dated July 24, 2001, in which the company informed him that his Ford Bronco was an unclaimed motor vehicle and must be claimed within 15 days or DCB would take title of it. The letter further stated that, in addition to the invoice for $1,367, Mannix was required to pay a storage cost and an administrative fee, totaling $110. An additional $10 per day storage fee would be charged until the bill was paid in full and the vehicle picked up. According to the statements of the evidence, DCB provided no evidence to refute Mannix's evidence.
 {¶ 27} In our judgment, it is a violation of the OCSPA to assess storage fees without prior notification that such charges may be imposed. The estimate provided to Mannix included an area in which to set forth a daily storage fee after three days. No storage fee was indicated. The weight of the evidence demonstrates that DCB violated the OCSPA by charging a storage fee without prior notice.
 {¶ 28} Fourth, the parties contest whether, as a matter of law, DCB was entitled to assert a garageman's lien on Mannix's vehicle and to refuse to tender the vehicle to Mannix until he had paid in full for the lawful repair charges. "When a garage owner provides repairs to a motor vehicle, unless the contract between the parties provides otherwise, the garage owner may retain possession of the motor vehicle as security for the value of the repairs." Robinson v. Barry Equipment Co. (July 23, 1982), Wood App. No. WD-82-10; Shearer v. Bill Garlic Motors,Inc. (1977), 59 Ohio App.2d 320, 322-24, 394 N.E.2d 1014. A garageman's right to retain possession of a repaired car pending payment is a common law lien. State v. Vitale (1997),96 Ohio App.3d 698, 702, 645 N.E.2d 1277; Commonwealth Loan Co. v.Berry (1965), 2 Ohio St.2d 169, 170, 207 N.E.2d 545, 546. R.C.1333.41, which addresses liens of bailees for hire, does not apply to motor vehicles. R.C. 1333.41(E).
 {¶ 29} Two courts have held that it is an unfair and deceptive practice under the OCSPA for a car mechanic or garageman to retain a common-law garageman's possessory lien on a motor vehicle after he has engaged in conduct which violates the Act. See Chun v. Staten (Nov. 17, 1986), C.P. No. 85-431;Porter v. Central Auto Elec. Radiator Shop, Inc. (Nov. 26, 1990), Tuscarawas Cty. M.C. No. 7-89-CVF-124. We likewise agree that, under certain circumstances, a mechanic may not retain possession of a motor vehicle upon violating the OCSPA.
 {¶ 30} In the present case, the trial court implicitly rejected Mannix's claim that DCB violated the OCSPA by asserting a garageman's lien, and we do not find such a conclusion to be unsupported. The evidence indicates, and the parties agree, that Mannix paid $1,000 to DCB for the vehicle repairs. Mannix therefore remains obligated to payment for the lawful repair costs for rebuilding of the engine and the new radiator. The parties further agree that Mannix testified that DCB had offered at one point to accept a payment of $1,000 (for a total of $2,000), but that Mannix had rejected this offer. Thus, unlike the defendant in Porter who refused to release the car until an amount $422 above the estimate had been paid, DCB had offered to release the car for the amount of the estimate. Because Mannix refused to pay the amount that was legitimately due to DCB, the trial court could have concluded that DCB did not violate the OCSPA by refusing to deliver the vehicle to Mannix until he had paid or offered to pay the legitimate portion of his bill.
 {¶ 31} Fifth, we find no merit to the contention that DCB materially understated or misstated the estimated cost of the repair. Here, DCB offered an estimate of $1,800 to $2,000 for the engine repairs. The evidence is contradictory as to whether the $200 range provided a cushion to cover unanticipated items, and the trial court apparently found that Mannix had agreed to pay $2,000 for the engine work. The trial court also found that Mannix had authorized DCB to replace the radiator, and that the total cost for the radiator and hoses was $280.96. The trial court found that the radiator costs were in addition to the engine work. Based on the record, these findings are not clearly erroneous. Thus, the total bill for the engine work (which excludes the radiator replacement), including tax, was $2086.29 ($2367.19-$280.96), or $86.29 above the original estimate. We do not find this difference to be material in the present case.
 {¶ 32} Finally, Mannix claims that the trial court erred in awarding only statutory damages. He asserts that the court should have credited his testimony that he had incurred $775 of rental car expenses. Although the court could have credited Mannix's testimony rather than requiring him to present documentary evidence to support that claim of damages, the court was not required to do so. We afford great deference to the factfinder's credibility determinations. See State v. Sherrill (Jan. 28, 2000), Montgomery App. No. 17359; State v. Reed,155 Ohio App.3d 435, 445, 2003-Ohio-6536, 801 N.E.2d 862. Because the trial court could have reasonably found that Mannix did not establish actual damages, we likewise cannot conclude that the trial court's failure to award him treble damages was erroneous.
 {¶ 33} In summary, we conclude the trial court erred in failing to find that DCB violated the OCSPA when it assessed storage charges without prior notice that such charges may be imposed. The trial court did not err in failing to find additional violations or in awarding statutory damages.
 {¶ 34} The first assignment of error is sustained in part and overruled in part.
 III. {¶ 35} In his second assignment of error, Mannix claims that, in calculating damages, the trial court should not have offset as recoupment the amounts owed to DCB for its repair work. Although focusing on the trial court's void judgment of May 16, 2003, Mannix emphasizes that DCB did not file a counterclaim for anything other than the storage charges, and it did not, at any time, seek to amend its counterclaim to include additional damages, such as unpaid repair costs. Mannix also claims that the trial court improperly calculated the amount owed to DCB. DCB responds that the parties litigated the amount due to DCB without objection from Mannix. It asserts that, pursuant to Civ.R. 15(B), the issue of damages must "be treated in all respects as if they had been raised in the pleadings." Mannix has replied that Civ.R. 15(B) does not apply because the evidence regarding the amount due to DCB arose in connection with the OCSPA claims. Mannix asserts that absent a claim for the recovery of any unpaid repair charges, damages cannot be awarded in DCB's favor.
 {¶ 36} Civ.R. 15(B) provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect the result of the trial of these issues. * * *"
 {¶ 37} The Supreme Court of Ohio has stated that "implied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection; it must appear that the parties understood the evidence was aimed at the unpleaded issue." State ex rel. Evans v. Bainbridge Twp.Trustees (1983), 5 Ohio St.3d 41, 46, 448 N.E.2d 1159, at paragraph 2 of the syllabus; see Molique v. Allen, Montgomery App. No. 19897, 2004-Ohio-460, ¶ 14. Three factors should be considered in determining whether the parties impliedly consented to litigate an issue: (1) whether they recognized that an unpleaded issue entered the case; (2) whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be retried on a different theory; and (3) whether the witnesses were subjected to extensive cross examination on the issue. Evans,5 Ohio St.3d at 45-46 and paragraph 1 of the syllabus. An issue may not be tried by implied consent where it results in substantial prejudice to a party. Id.; Molique, supra, at ¶ 14. Whether an issue has, in fact, been tried by implied consent is a matter left to the trial court, and we review that determination for an abuse of discretion. Evans, supra, at paragraph 3 of the syllabus.
 {¶ 38} It is apparent from the scant record that the parties litigated the issues of what the estimate provided, what was paid by Mannix, and which itemized charges should have been included in the estimate for the engine repair as opposed to legitimate additional charges. The parties disputed whether the $200 estimate range was intended to provide a cushion to cover "unanticipated items," and they disputed whether the radiator replacement should have been included in this alleged cushion. Mannix asserts that the spark plugs, oil change, and thermostat were also incidental to the engine work and, thus, should have been included in the estimate. There is no evidence that Mannix objected to the admission of evidence concerning these issues. As stated above, the trial court resolved these issues by finding that Mannix owed a total of $280.96 for the radiator replacement and $2,000 for the engine work, and that DCB had violated the OCSPA in three respects.
 {¶ 39} Although the trial transcript is not before us, the trial court apparently concluded that the issue of the amount properly due to DCB was before the court, and that Mannix knew or reasonably should have known that DCB was asking the court to award a judgment for the lawful unpaid balance or to set it off from any judgment it awarded Mannix on his claims under the OCSPA. See Brown v. Learman (Nov. 3, 2000), Miami App. No. 00CA30 (in a suit for the return of an engagement ring, the plaintiff implied consented to litigate the defendant's expenditures made in anticipation of the wedding, and the trial court was authorized to enter judgment in the defendant's favor on that issue or to offset the plaintiff's award by those expenditures). Based on the record, we cannot conclude that the trial court abused its discretion in making this determination. Moreover, upon review of the record, we cannot conclude that the trial court's determination that Mannix owed DCB a total of $2280.96 was clearly erroneous.
 {¶ 40} The second assignment of error is overruled.
 {¶ 41} The judgment of the trial court will be affirmed in part, reversed in part, and remanded for further proceedings. In particular, this action is remanded for a determination of damages for the violation of the OCSPA due to the assessment of storage fees. Upon remand, the trial court may recalculate the appropriate damages for each party, taking into account the additional OCSPA violation and Mannix's sole payment of $1,000 to DCB.
Grady, J. and Young, J., concur.